Argued and submitted January 28, reversed and remanded March 31, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDWARD MERRIMON,
aka Edward C. Merrimon,
*Defendant-Appellant.*

Multnomah County Circuit Court
071035096; A139106

228 P3d 666

Reversed and remanded.

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction, following a jury trial, for one count of sexual abuse in the first degree, ORS 163.427, and one count of endangering the welfare of a minor, ORS 163.575. He asserts, among other assignments of error, that the trial court erred in admitting a medical expert's diagnosis of the child complainant as "highly concerning of sexual abuse" where that diagnosis was rendered in the absence of any confirming physical evidence. As explained below, and consistently with the analysis in *State v. Lovern*, 234 Or App 502, 228 P3d 688 (2010), we conclude that, even assuming that the present appellate challenge to the admission of the expert's diagnosis was unpreserved, the admission of that testimony represents an "error of law apparent on the face of the record," ORAP 5.45(1),[1] in light of *State v. Southard*, 347 Or 127, 218 P3d 104 (2009). *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (error apparent is determined according to "the law existing at the time the appeal is decided"). We further determine that it is proper for us to affirmatively exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), to remedy that error. Accordingly, we reverse and remand.[2]

The material circumstances for purposes of our review are uncontroverted. Defendant was indicted for criminal mistreatment in the first degree, unlawful sexual penetration in the second degree, three counts of sexual abuse in the first degree, attempted sodomy in the first degree, and two counts of endangering the welfare of a minor, based on allegations made by R, his then 14-year-old daughter.

Specifically, in the fall of 2006, R reported to her boyfriend, her mother, a school counselor, and a police officer that defendant had earlier abused her. The conduct that she

---

[1] ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the face of the record."

[2] Our analysis and disposition obviates any need to address defendant's other assignments of error, which pertain to purported instructional error that may not recur on remand or, at least, may be presented in a different posture.

described included defendant touching her vagina with a vibrator, penetrating her vagina with his finger, touching her breasts, playing pornographic videos, and masturbating in front of her.

After her disclosures, R was evaluated at CARES Northwest, a child abuse assessment center. Munson, a pediatric nurse practitioner, was part of the team that evaluated R at CARES. At trial, Munson testified about her training and experience in the area of child abuse, described the CARES evaluation process, and explained how child abuse diagnoses typically are made. Munson testified that, at CARES, the possible diagnoses with respect to child sexual abuse are "no indication, possible, highly concerning, and diagnostic," and that, without a physical examination, "highly concerning" is the most definitive diagnosis that can be made.

Munson further testified—over defendant's objection (described below)—that her diagnosis of R was "highly concerning of sexual abuse." That diagnosis was based on an interview with R, which Munson observed through a one-way mirror, and her physical examination of R. Munson also reviewed the police officer's report of his interview with R and the school counselor's report to the child abuse hotline; from that review, she concluded that the "core details" of what R had reported earlier were consistent with R's disclosures during her CARES evaluation. R refused the anogenital part of the physical examination, which, in Munson's experience, is "relatively common" for adolescents to do, so there was no physical evidence supporting Munson's diagnosis. In any event, Munson testified that she would not necessarily have expected to have found physical evidence, given the type of sexual abuse R reported and possible physiological factors.

In objecting to evidence of Munson's diagnosis, defense counsel first argued that the evidence was inadmissible because it was an improper comment on R's credibility. In response, the state cited *State v. Sanchez-Cruz*, 177 Or App 332, 33 P3d 1037 (2001), *rev den*, 333 Or 463 (2002), in which we held that a diagnosis of child sexual abuse met the standards for the admissibility of scientific evidence under

*State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995). When the trial court subsequently overruled defendant's objection relying on *Sanchez-Cruz*, defendant argued that the cases were distinguishable because, in *Sanchez-Cruz*, there was physical evidence supporting the diagnosis. Although the court found that to be a closer question, the court adhered to its initial ruling.

The jury found defendant guilty of one count of sexual abuse in the first degree, ORS 163.427,[3] based on defendant touching R's vaginal area, and one count of endangering the welfare of a minor, ORS 163.575.[4] The court granted defendant's motion for judgment of acquittal on another of the first-degree sexual abuse counts (based on touching R's breasts), and the jury found defendant not guilty of the remaining counts.

On appeal, defendant argues, *inter alia*, that the trial court erred under *Southard* in admitting evidence of Munson's diagnosis of R as "highly concerning of sexual abuse," where that diagnosis was rendered "in the absence of any physical evidence of abuse." *Southard*, 347 Or at 142. That assignment of error is presented in the same posture as the dispositive assignment in *Lovern*—that is, defendant's trial occurred before *Southard* was decided, and the parties dispute whether defendant adequately preserved his claim of

---

[3] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]"

[4] ORS 163.575 provides, in part:

"(1) A person commits the crime of endangering the welfare of a minor if the person knowingly:

"(a) Induces, causes or permits an unmarried person under 18 years of age to witness an act of sexual conduct * * * as defined by ORS 167.060[.]"

ORS 167.060(10), in turn, defines "sexual conduct" to mean

"human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification."

error. Also as in *Lovern*, however, we need not resolve the parties' preservation dispute, because, as we explained in that case, the trial court's admission, following *Southard*, of a medical expert's diagnosis of child sexual abuse in the absence of physical evidence satisfies the requisites for "plain error" under ORAP 5.45 and because it is appropriate for us to exercise our discretion to correct that error. *Lovern*, 234 Or App at 508-13.

We do not understand the state here to raise any contentions materially different from those addressed in *Lovern* as to whether the asserted error was plain error. Thus, the only question is whether we should affirmatively exercise our discretion to remedy the plain error in this case. *See Ailes*, 312 Or at 382 (even if an error meets the requisites for plain error, the appellate court "must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so"). Factors bearing on that inquiry include, but are not limited to, "the competing interests of the parties; the nature of the case; the gravity of the error; [and] the ends of justice in the particular case." *Id.* at 382 n 6.

The state argues against the exercise of discretion in this case, contending that, because the erroneously admitted diagnosis here was "highly concerning" rather than definitive for child sexual abuse, as was the case in *Lovern*, the error is not sufficiently grave to warrant correction. The state does not argue that that distinction renders *Southard* inapplicable; indeed, at oral argument, the state explicitly agreed that Munson's statement was a medical diagnosis that would have been inadmissible under *Southard* if defendant had invoked OEC 403 as a basis for exclusion. Rather, the state contends that, because the diagnosis was not conclusive for sexual abuse, defendant was better able to attack it on cross-examination and, as a result, the error was not sufficiently "grave" to compel reversal.

We disagree for several reasons. First, we find no support in *Southard* for the distinction that the state posits. Like the definitive diagnosis at issue in *Southard*—indeed, perhaps more so—a diagnosis of "highly concerning of sexual abuse" without confirming physical evidence has marginal

probative value. *See Southard*, 347 Or at 140. Moreover, such a diagnosis carries with it "the expert's implicit conclusion that the [alleged] victim's reports of abuse are credible." *Id.* at 141. Although that implicit conclusion is, perhaps, not as pronounced as when an expert makes a definitive diagnosis of abuse, it nonetheless comes from "a credentialed expert, surrounded with the hallmarks of the scientific method," *id.* at 140, and the jury was informed that the "highly concerning" diagnosis was the most definitive that the expert was permitted to render in the absence of a physical examination. Consequently, as in *Southard*, such a diagnosis "create[s] a substantial risk" that "the jury will not make its own credibility determination * * * but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible." *Id.* at 140-41. As with a more definitive diagnosis, that risk outweighs whatever little probative value the diagnosis may have.[5]

Second, as in *Lovern*, the state's case was premised on the complainant's credibility. Here, other than R's own testimony, the state presented no eyewitness testimony or direct evidence that the events in question occurred. Rather—in addition to Munson's testimony—the state's case consisted primarily of R's testimony, the videotape of her interview at CARES, and testimony from several witnesses as to what R had told them about the alleged abuse. Conversely, defendant's theory of the case was that R fabricated the accusations. Defense counsel pointed out inconsistencies in the various accounts that R gave and presented testimony from R's boyfriend and other witnesses that R had a reputation for being untruthful. The defense also presented testimony from R's former therapist that R had previously "heard voices" and attempted to show that R was lying on the stand. Finally, the defense posited that R made up the allegations to get attention and because she was mad at her mother for not letting her see her boyfriend.

In short, as the prosecutor told the jury in closing argument, "[T]his case has really come down to do you

---

[5] To the extent that the state relies on the fact that the jury acquitted defendant of other counts as support for its argument, we reject the state's logic for the reason that we rejected it in *Lovern*. *See Lovern*, 234 Or App at 513-14.

believe [R]." Under those circumstances, the potential prejudice from the erroneous admission of Munson's diagnosis is patent.

Finally, the state suggests that the interests of the justice system in avoiding unnecessary retrials, *see State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007), militate against a positive exercise of *Ailes* discretion. In the state's view, because, under *Southard*, only Munson's ultimate diagnosis (as opposed to the balance of her testimony) would be excluded on remand, the result of a retrial would be the same. We disagree. As explained above, the state's case depends on the jury's assessment of R's credibility. The risk that the jury improperly deferred to Munson's diagnosis rather than make its own determination in that regard was substantial. Thus, the result of a retrial without Munson's diagnosis is far from certain.

In sum, the gravity of the error and the interests of justice militate conclusively in favor of us exercising our discretion to correct the error in this case.[6] As a final point, although the parties do not actually raise it, we must consider whether that conclusion requires us to reverse and remand both of defendant's convictions. Munson diagnosed R as "highly concerning of sexual abuse" based on all of R's disclosures, including her statements that defendant had touched himself and masturbated in her presence—and the latter conduct, presumably, formed the basis for the endangerment charges.[7] Thus, there is a substantial danger that the jury was prejudicially influenced by Munson's testimony in convicting defendant on the charge of endangering the welfare of a minor, as well as in convicting defendant of first-degree sexual abuse.

Reversed and remanded.

---

[6] The state's argument that defendant may have had a tactical reason for not properly objecting to Munson's diagnosis—and for that reason it is not appropriate for us to address its admission as plain error—is, for the reasons stated in *Lovern*, unavailing. *See Lovern,* 234 Or App at 511-12.

Similarly, as in *Lovern*, a positive exercise of *Ailes* discretion in these circumstances does not subvert the general policies underlying the preservation doctrine. *See Lovern*, 234 Or App at 514.

[7] As noted, defendant was charged with two counts of endangering the welfare of a minor. The jury acquitted him of one count and convicted him of the other.