Argued and submitted February 18, reversed and remanded April 21, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STEPHEN ANTHONY CLAY,
*Defendant-Appellant.*

Washington County Circuit Court
C062810CR; A136583

230 P3d 72

David J. Celuch argued the cause and filed the briefs for appellant.

Rene C. Holmes, Senior Assistant Attorney General, argued the cause for respondent. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who was convicted after a jury trial of two counts of sexual abuse in the first degree, ORS 163.427, appeals. He assigns error to, *inter alia*, the trial court's admission, over defendant's objection, of a pediatric nurse practitioner's expert diagnosis that the complainant had been sexually abused. That diagnosis was rendered "in the absence of any physical evidence of abuse." *State v. Southard*, 347 Or 127, 142, 218 P3d 104 (2009). As explained below, we conclude, consistently with the analyses of *State v. Lovern*, 234 Or App 502, 228 P3d 688 (2010), and *State v. Merrimon*, 234 Or App 515, 228 P3d 666 (2010), that the trial court's admission of the sexual abuse diagnosis testimony requires that defendant's convictions be reversed and the case be remanded.[1]

The material circumstances for purposes of our review are uncontroverted. In October 2006, defendant was charged by indictment with one count of first-degree sexual abuse involving a juvenile, A, which allegedly occurred between September 1998 and September 2000; two counts of first-degree unlawful sexual penetration, ORS 163.411; and three counts of first-degree sexual abuse involving a juvenile, J, with those crimes allegedly occurring between August 1998 and August 2000. Defendant's mother and J's mother were friends, and defendant babysat J. The charged offenses, which involved touching conduct, allegedly occurred while defendant was babysitting or otherwise supervising J, including one occasion on which A, a friend of J's, was visiting. During the period specified in the indictment, defendant was between 13 and 15 years old and J was between seven and nine years old.

J did not disclose defendant's purported conduct to anyone until several years later. In 2003, she first told a friend about that conduct. J did not disclose the alleged abuse

---

[1] That disposition obviates any need to address defendant's other assignment of error, which pertains to the exclusion of evidence regarding an alleged prior incident of abuse of the complainant by another person. The state contends that that purported error was insufficiently developed for our review—and, on remand, that matter may be presented in a different posture.

to her family until January 2006, when, during an argument, she told her mother that defendant had abused her.

Shortly after the disclosure to her mother, J was evaluated at CARES Northwest, a child victim assessment center. As a matter of standard practice and protocol, the CARES evaluation includes two components: a physical examination and obtaining pertinent history, including an interview with the complainant. J was, in fact, interviewed by CARES personnel and described the alleged abuse; a video-tape of that interview was admitted as evidence at trial and viewed by the jury. CARES personnel did not, however, conduct any physical examination of J. That was so both because of the nature of the alleged abuse and the time that had elapsed between that alleged conduct and the evaluation and because a medical care provider had recently examined J and CARES personnel understood the result of that physical examination to have been "normal." Ultimately, based on the CARES evaluation, McCready, a CARES pediatric nurse practitioner, rendered a diagnosis that J had been sexually abused.

At trial, McCready testified, describing the CARES evaluation process generally and J's evaluation specifically. When the state sought to elicit testimony recounting McCready's diagnosis, defendant objected. In particular, defendant asserted that, in the circumstance of this case, the expert diagnosis of sexual abuse was inadmissible because it did not satisfy the requisites for scientific evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), in that CARES had not performed any physical examination of J and, thus, the diagnosis was not predicated on the estab-lished protocol. In raising that objection, defendant did not invoke OEC 403.

The court overruled that objection. McCready then testified that, to a reasonable medical certainty, she had diagnosed J as having been sexually abused.

Defendant denied the alleged abuse, acknowledging only that it was possible that, on one occasion, he may have accidentally touched J over her clothing. At trial, the defense

presented extensive character evidence, as well as expert testimony regarding the incidence and dynamics of false or inaccurate reporting of child sexual abuse, with particular reference to a complainant's susceptibility to "source errors."

Ultimately, the jury convicted defendant of two counts of first-degree sexual abuse pertaining to J, but acquitted defendant on the remaining four counts.

On appeal, defendant argues, in part, that the trial court erred under *Southard* in admitting evidence of McCready's expert diagnosis that J had been sexually abused where that diagnosis was rendered "in the absence of any physical evidence of abuse." *Southard*, 347 Or at 142. That contention is presented in the same posture as the dispositive contentions in *Lovern* and *Merrimon*—that is, defendant's trial occurred before *Southard* was decided, and the parties dispute whether defendant adequately preserved his claim of error. As in those cases, however, we need not resolve the parties' preservation dispute, because the trial court's admission, following *Southard*, of a medical expert's diagnosis of child sexual abuse in the absence of physical evidence satisfies the requisites for "plain error" under ORAP 5.45(1), *see also State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), and because it is appropriate for us to exercise our discretion to correct that error.

The state acknowledges that, given *Southard*, the asserted error is plain error. Accordingly, our inquiry reduces to whether we should affirmatively exercise our discretion to remedy that error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).

The same considerations that conclusively militated in favor of an affirmative exercise of *Ailes* discretion in *Lovern* and *Merrimon* are present and dispositive in this case. Here, as in those cases, the jury's assessment of the complainant's credibility was critical: J recounted the purported conduct, and defendant denied it. There were no disinterested eyewitnesses to, or any physical corroboration of, the alleged abuse. In those circumstances, the admission of McCready's expert diagnosis testimony "created a substantial risk" that the jury would improperly "defer to the expert's implicit conclusion" that J was credible with respect to at

least some of the incidents of abuse that she recounted. *Southard*, 347 Or at 140-41.

Further, for the reasons described in *Lovern*, 234 Or App at 514, addressing and remedying the error here will not subvert the policies underlying the preservation doctrine. *See also Merrimon*, 234 Or App at 522 n 6. In a related sense, it is implausible on this record that defense counsel made a conscious tactical choice not to invoke OEC 403 in objecting to the admission of McCready's expert diagnosis testimony. *See Lovern*, 234 Or App at 512; *Merrimon*, 234 Or App at 522 n 6.

Finally, we reject as unpersuasive two matters that the state urges militate against an affirmative exercise of *Ailes* discretion. First, the state asserts that, given defense counsel's vigorous cross-examination of McCready, it was "unlikely" that the jury accorded McCready's expert diagnosis "significant weight"—and, indeed, that the risk of the jury having done so was "negligible." With respect—and leaving for future cases whether such a proposition is abstractly irreconcilable with *Southard*'s analysis and holding—we reject that assertion on this record for the reasons described previously. *See* 235 Or App at 30. Second, in a related sense, the state contends that the jury's acquittal of defendant on some of the counts involving J confirms that the admission of McCready's expert diagnosis testimony was not, in fact, prejudicial. We reject that assertion for the same reasons expressed in *Lovern*, 234 Or App at 514.

In sum, given the foregoing considerations, remedying the plain error in this case comports with, and promotes, the "ends of justice." *Ailes*, 312 Or at 382 n 6.

Reversed and remanded.