Argued and submitted July 28, affirmed September 21, 2011, petition for review denied April 19, 2012 (351 Or 761)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DAVID GEORGE VIDAL,**
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0801614; A142579

263 P3d 364

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Kristen G. Williams, Assistant Attorney General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.*

BREWER, C. J.

---

* Brewer, C. J., *vice* Sercombe, J.

## BREWER, C. J.

Defendant was convicted on two counts of first-degree rape, three counts of first-degree unlawful sexual penetration, and one count each of first-degree sodomy and first-degree sexual abuse. ORS 163.375; ORS 163.411; ORS 163.405; ORS 163.427. The victim of the crimes was a neighbor child who was approximately eight years old when the crimes occurred. On appeal, defendant raises numerous challenges to his convictions and sentences. We reject without discussion each of defendant's arguments except his argument that the trial court committed plain error by admitting into evidence expert medical testimony concerning a diagnosis of child sexual abuse. As explained below, because we conclude that any error in that respect is not apparent on the face of the record, we affirm.

Because defendant was convicted, we summarize the pertinent facts in the light most favorable to the state. *State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005). The victim, MH, regularly came to defendant's apartment to play with defendant's son when both children were approximately eight years old. Defendant and the victim's family became friends, and the victim was permitted to spend the night at defendant's apartment when his son was there. On several different occasions, defendant sexually assaulted the victim. The victim told her mother about the assaults, and the victim subsequently was interviewed and physically examined at The Children's Center, a private nonprofit organization that specializes in the assessment of child sexual abuse.

In her interview at The Children's Center, MH described the sexual abuse in a manner consistent with her later testimony at trial. After the interview was conducted, O'Dell, a pediatric nurse practitioner employed by The Children's Center, examined the victim. She observed several irregularities in MH's hymen. In particular, she observed decreased hymenal tissue and what she described as "angularities" at several locations on the posterior of the hymen. O'Dell testified that a person can be born with such irregularities on the anterior part of the hymen, but that irregularities on the posterior of the hymen can indicate a

penetrative injury caused by abuse or assault. Regarding the irregularities in MH's hymen, O'Dell stated that "just looking at it by itself, yes, it would be significant to me." When asked if that type of finding "is indicative of penetration," O'Dell responded, "Yeah. It's suggestive of it, yes." She then explained that other types of injuries to a child's genital region, such as an injury caused by falling on a bicycle, would "not normally" cause an injury to the posterior region of a child's hymen. O'Dell explained that the physical findings were "significant" because the victim's hymenal irregularities could have been caused by a penetrating injury. She testified that she made a diagnosis of child sexual abuse based on four factors: the history given to the Children's Center, the "physical examination findings," the existence of factors that may increase the risk of abuse, and MH's "clear, detailed statements." On cross-examination, O'Dell was asked if the irregularities in MH's hymen "could be a variation of normal" or "could be something besides abuse," and she responded, "Yes."

Defendant did not object to O'Dell's testimony concerning her diagnosis. On appeal, he asserts that the admission into evidence of O'Dell's diagnosis constituted plain error, citing *State v. Southard*, 347 Or 128, 218 P3d 104 (2009).[1]

In *Southard*, the issue was whether expert medical testimony diagnosing a child with sexual abuse was admissible into evidence "in the absence of any physical evidence of abuse." *Id.* at 142. The alleged sexual offenses in *Southard* concerned oral sodomy; the medical examination of the victim "did not reveal any physical evidence of sexual abuse." *Id.* at 130-31. The physician who examined the child nonetheless diagnosed sexual abuse "after consulting with the social worker who had interviewed the boy[.]" *Id.* at 132. As an initial matter, the court concluded that the medical diagnosis of sexual abuse was scientifically valid evidence, in light of the various factors set out in *State v. Brown*, 297 Or 404, 687 P2d 751 (1984). *Southard*, 347 Or at 133-39.

The court in *Southard* then turned to the question whether the evidence should nonetheless have been excluded

---

[1] The trial in this case occurred before *Southard* was decided.

as unduly prejudicial under OEC 403. The court determined that the medical diagnosis in that case did not tell the jury anything that it was not capable of determining for itself, because "the criteria that the staff used to decide whether to credit the boy's testimony are essentially the same criteria that we expect juries to use every day in courts across this state to decide whether witnesses are credible." *Id.* at 140. On balance, the court assessed the risk of prejudice as great, because "the diagnosis came from a credentialed expert, surrounded with the hallmarks of the scientific method[.]" *Id.* The court concluded:

> "Our holding today is narrow. The only question on review is whether a diagnosis of 'sexual abuse'—*i.e.*, a statement from an expert that, in the expert's opinion, the child was sexually abused—is admissible in the absence of any physical evidence of abuse. We hold that where, as here, that diagnosis does not tell the jury anything that it could not have determined on its own, the diagnosis is not admissible under OEC 403."

*Id.* at 142.

Defendant relies on *Southard* and our subsequent decision in *State v. Lovern*, 234 Or App 502, 228 P3d 688 (2010), for the proposition that the admission of the medical diagnosis in the present case constituted plain error that obviates the necessity of preservation of the error before the trial court. *See State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (an error is apparent on the face of the record if the error is one of law, the legal point is not reasonably in dispute, and the court need not go outside the record or choose between competing inferences to find it). In this case, we conclude that the legal point *is* reasonably in dispute, and, accordingly, we do not treat the unpreserved claim of error as error apparent on the face of the record. ORAP 5.45(1).

As noted, *Southard* itself announced a rule that concerned an expert medical diagnosis of sexual abuse "in the absence of any physical evidence of abuse," and it narrowly limited its holding to those circumstances. 347 Or at 142. The present case does not fall within the court's narrow holding. O'Dell testified that her physical findings concerning MH's hymen were "significant." Indeed, she listed those findings as

one of the four factors that contributed to her diagnosis of sexual abuse. Defendant remonstrates that our decision in *Lovern,* in which we held that admission of a medical diagnosis of sexual abuse qualified as "plain error" under *Southard,* supports his position. As explained below, we conclude that *Lovern* is materially distinguishable.

In *Lovern,* the defendant was convicted of multiple counts of first-degree sexual abuse, based on allegations that he had touched his 12-year-old daughter's vagina, breasts, and buttocks. *Id.* at 504. The victim was evaluated at a child-abuse assessment center, and a medical examination was conducted. The examining physician testified that the child's hymen was "non-specifically abnormal," explaining that there were notches in a part of the hymen, and that it "wasn't perfectly normal but it wasn't specifically abnormal that I know for sure there's been an injury there." *Id.* at 505. She described the condition as "unusual" but "not so specific that it indicates that there was clearly an injury there before." *Id.* Although the physician indicated that her diagnosis included consideration of the physical examination, we noted:

> "[T]here is no relationship between the 'unusual appearance' of the complainant's hymen and the type of sexual abuse charged in this case; accordingly, [the physician's] general reference to the complainant's anal/genital examination cannot be understood to indicate reliance on that abnormality as corroborating the abuse alleged here."

*Id.* at 506 n 2; *see also id.* at 511 n 6 ("Given the nature of the charged conduct, which did not involve penetration of the complainant's vagina, the results of the physical examination did not corroborate the alleged abuse.").

We concluded that there was "no material legal distinction between the admissibility of the expert's diagnosis of sexual abuse in *Southard* and the admission of the diagnosis in this case." *Lovern,* 234 Or App at 510-11. We noted that the expert herself had stated that she could not "really tell one way or the other" from the physical examination whether an injury had occurred. *Id.* at 511. We concluded:

"In sum, as in *Southard*, the physician's diagnosis of sexual abuse in this case was based *solely* on the complainant's statements and history, without any physical evidence corroborative of the charged sexual abuse."

*Id.* (emphasis added).

Defendant asserts that the challenged evidence in this case is comparable to the evidence at issue in *Lovern*, noting that both involved evidence of notches in the victims' hymens. We disagree. *Lovern* does not stand for the proposition that notches in a child's hymen can never be sufficiently corroborative of sexual abuse to cause a diagnosis to fall outside the "narrow" rule of law announced in *Southard*. As noted, the alleged abuse at issue in *Lovern* was not the sort that would lead to penetrative injuries. The child in that case was 12 years old, and the expert certainly underplayed—if not rejected outright—any significance of the appearance of the child's hymen in making the diagnosis of sexual abuse. Here, by contrast, the child victim was younger, and the expert, O'Dell, testified in great detail about the irregularities in the child's hymen and, indeed, she provided photographic evidence showing the exact nature of the irregularities that were significant to her diagnosis. She indicated that her findings were consistent with a penetrative injury to the vagina; as noted, the charged abuse in this case involved allegations of penetration of the victim's vagina. Moreover, and in marked contrast to the evidence at issue in *Lovern*, in this case, O'Dell testified that "just looking at [the hymen] *by itself*, yes, it would be significant to me." (Emphasis added.) Although O'Dell acknowledged on cross-examination that the irregularities *could have* been "a variation of normal" or caused by "something besides abuse," that caveat does not make this case comparable to *Southard* or *Lovern*, which, as noted, involved *no* "physical evidence corroborative of the charged sexual abuse." *Id.* at 511.

In sum, *Southard* left open the question of whether OEC 403 would require exclusion of medical testimony of child sexual abuse where physical evidence supports an expert's opinion. *Lovern*, likewise, left that question unanswered. We conclude that the legal point at issue here *is*

"reasonably in dispute," *Brown*, 310 Or at 355, and thus no error is apparent on the face of the record.

Affirmed.