Argued and submitted November 15, reversed and remanded December 29, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DOUGLAS ALFRED FELLER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0800575; A141928

269 P3d 110

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the briefs were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment convicting him of two counts of first-degree sodomy, ORS 163.405, one count of first-degree unlawful sexual penetration, ORS 163.411, and six counts of first-degree sexual abuse, ORS 163.427. He contends that, in the absence of supporting physical evidence, the trial court erred in admitting a physician's diagnosis of "concerning" for sexual abuse. *See State v. Southard*, 347 Or 127, 218 P3d 104 (2009). Although defendant acknowledges that he did not raise that issue before the trial court, he argues that admission of that diagnosis was plain error under *Southard*. *See* ORAP 5.45(1).[1] We agree with defendant that the trial court committed plain error in admitting the diagnosis and that it is proper for us to affirmatively exercise our discretion to correct the error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). Therefore, we reverse and remand.[2]

Defendant was a friend of the victim's family and co-owned a piece of property with the victim's father. The victim's family lived in a house on the property, and defendant also lived on the property in a travel trailer. The victim, a five-year-old boy, told his babysitter that defendant had licked his "pee-pee" and that "he had to touch [defendant's] pee-pee." He repeated those statements the next day to his mother, who soon thereafter called the child abuse hotline, and eventually scheduled an appointment for the victim at CARES Northwest and also talked with a detective about the victim's statements. At CARES, the victim was examined by Dr. Dan Leonhart and interviewed by a child abuse interviewer. The examination revealed no physical evidence of abuse. However, based on the victim's spontaneous disclosure of abuse to his babysitter as well as his statements to his mother, Leonhart made a diagnosis of "concerning" for sexual abuse. Leonhart testified about that diagnosis during the trial with no objection from defendant.

---

[1] Pursuant to ORAP 5.45(1), "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the record."

[2] Because we reverse and remand based on the admission of the diagnosis, we do not address defendant's remaining contentions on appeal.

In his testimony, Leonhart explained that "concerning" and "highly concerning" are in the "same ballpark" and that he often uses the terms "interchangeably." He testified that his diagnostic terminology is to address whether he does not "think there's anything to suggest [the abuse] happened" or whether he is "concerned that something happened, or [is] actually diagnosing that something [happened]—* * * child maltreatment, in this case it would be sexual abuse." According to Leonhart, in this case, the most concerning thing was the victim's "accidental" disclosure to the babysitter, and he noted that "the child isn't intending to say something that's really going to get this process going, they are just saying something in [the] context of interacting with someone[.]" There was also testimony presented at trial regarding the CARES treatment recommendations following the examination. Those recommendations included that the victim have no contact with defendant and receive individual counseling, as well as a support group for the victim's parents, and that the victim's parents not question the victim further about the abuse.

As noted, defendant argues on appeal that the admission of Leonhart's diagnosis, in the absence of physical evidence of abuse, was plain error and that we should exercise our discretion to correct the error. The state responds that because the doctor's diagnosis was "concerning" for sexual abuse rather than a straight sexual abuse diagnosis, there is no plain error under *Southard*. Furthermore, the state contends that there are "competing inferences about whether defendant wanted Leonhart's 'diagnosis' admitted into evidence." (Boldface omitted.) We disagree.

Since *Southard*, this court had repeatedly held that, in the absence of physical evidence of abuse, a trial court's admission of a medical expert's diagnosis of sexual abuse is plain error. *See, e.g., State v. Potts*, 242 Or App 352, 353, 255 P3d 614 (2011); *State v. Clay*, 235 Or App 26, 30, 230 P3d 72 (2010) ("[T]he trial court's admission, following *Southard*, of a medical expert's diagnosis of child sexual abuse in the absence of physical evidence satisfies the requisites for 'plain error' under ORAP 5.45(1)[.]"); *State v. Lovern*, 234 Or App 502, 508-12, 228 P3d 688 (2010) (it is plain error to admit a

diagnosis of child sexual abuse in the absence of physical evidence). We have so held even in circumstances where the diagnosis was "highly concerning" for sexual abuse. *See State v. Arriaza*, 236 Or App 456, 457-58, 237 P3d 222 (2010) (the trial court's admission of a doctor's diagnosis of "highly concerning for sexual abuse" was error apparent on the face of the record); *State v. Merrimon*, 234 Or App 515, 517, 228 P3d 666 (2010) (the trial court committed plain error in admitting, in the absence of physical evidence, a diagnosis of "highly concerning of sexual abuse"). Most recently, in *State v. Volynets-Vasylchenko*, 246 Or App 632, 267 P3d 206 (2011), a case where the diagnosis itself was not admitted into evidence, we held that the trial court committed plain error under *Southard* in admitting, in the absence of physical findings, treatment recommendations that implied that a diagnosis had been rendered.

In *Merrimon*, the state attempted to distinguish the circumstances from those presented in *Southard*, pointing to the fact that the diagnosis was not a "definitive diagnosis" like that at issue in *Southard*. *Merrimon*, 234 Or App at 520. We explained that, "[l]ike the definitive diagnosis at issue in *Southard*—indeed, perhaps more so—a diagnosis of 'highly concerning of sexual abuse' without confirming physical evidence has marginal probative value." *Id.* at 520-21. Furthermore, "such a diagnosis carries with it 'the expert's implicit conclusion that the [alleged] victim's reports of abuse are credible.'" *Id.* at 521 (quoting *Southard*, 347 Or at 141) (brackets in *Merrimon*). Similarly here, the fact that the doctor made a diagnosis of "concerning" for sexual abuse is not a basis on which to distinguish this case from the many cases in which we have concluded that the admission of a diagnosis of sexual abuse in the absence of physical evidence is plain error. The doctor in this case explained that he uses the terms "concerning" and "highly concerning" for child sexual abuse interchangeably. As in *Merrimon*, such a diagnosis has marginal probative value and carries with it the implicit conclusion that the victim's report is credible.

Nor do we find convincing the state's assertion that there are competing inferences regarding whether defendant wanted the diagnosis admitted. In support of its contention, the state points to defendant's discussion of the diagnosis

during opening and closing arguments, which emphasized that the doctor was only "concerned" about sexual abuse. According to the state, "it is inferable that defense counsel intended to allow Dr. Leonhart's 'diagnosis' and testimony to create reasonable doubt as to whether [the victim] had been sexually abused." We rejected a similar argument in *Lovern*. In that case, the state contended that "the defense may have made a tactical choice not to properly object to [the medical expert's] diagnosis so that it could use that evidence to its own advantage[.]" 234 Or App at 511. Based on the circumstances, we concluded that the inference that the state proposed was implausible. Similarly here, we are unpersuaded that there is a plausible inference that defendant did not object to the evidence because he wanted to use it to support his case. At the time of the trial in this case, which occurred before *Southard* was decided, this type of diagnosis evidence was understood to be admissible. *See State v. Wilson*, 121 Or App 460, 465-66, 855 P2d 657, *rev den*, 318 Or 61 (1993) (the trial court did not err in admitting, in the absence of physical evidence, expert testimony that diagnosed a child as a victim of sexual abuse). Given that state of the law, the only inference that we draw from defendant's failure to object is that counsel understood that an objection would be futile and, instead, attempted, as much as possible, to combat any adverse effect the expert evidence would have on the jury's view of the case.[3]

In sum, as we have concluded in "dozens of cases involving unpreserved claims of error under *Southard*," *Volynets-Vasylchenko*, 246 Or App at 638, we conclude that the trial court committed plain error in admitting the evidence in question. Furthermore, for the reasons set forth in *Lovern* and *Merrimon*, we conclude that it is appropriate to exercise our discretion to correct the error in this case.

Reversed and remanded.

---

[3] For the same reasons, we are unpersuaded by the state's assertion that we should not exercise our discretion to correct the error in this case because "the record supports the inference that defendant made a conscious tactical decision not to object to Dr. Leonhart's diagnosis."