Argued and submitted April 12, reversed and remanded August 7, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STEVEN EUGENE WELLS,
*Defendant-Appellant.*

Washington County Circuit Court
C001364CR; A150347

308 P3d 274

Ryan Scott argued the cause and filed the brief for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant was convicted of two counts of first-degree sexual abuse in 2001. This court affirmed his convictions without opinion, and the Supreme Court denied review. *See State v. Wells*, 187 Or App 115, 66 P3d 1030, *rev den*, 335 Or 656 (2003). Defendant sought a writ of habeas corpus in federal court. The court concluded that defendant had been deprived of effective assistance of appellate counsel, and it ordered the state to provide him with competent counsel and the opportunity for a new direct appeal, which is the posture in which the case is now before us. Defendant presents several arguments, including that, at his criminal trial, the court erred in admitting evidence that the alleged victim had been diagnosed as having been sexually abused without there having been any physical evidence of abuse. The state contends that defendant did not preserve that claim of error at his 2001 trial. However, it acknowledges that the Supreme Court's subsequent holdings in *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), and *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), "apply to defendant's appeal" under *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). The state also acknowledges that this court may "view defendant's claim of error as plain error." Nonetheless, the state urges us not to exercise our discretion to review for plain error in this case. We conclude that plain-error review is appropriate here and that defendant is entitled to a new trial. Accordingly, we reverse.

The facts material to this appeal are not in dispute. In 2000, L, A, and J, three friends of defendant's daughter, accused defendant of having touched them inappropriately. All three girls were taken to CARES, a child abuse assessment center, for evaluation. Defendant was eventually charged with eight counts of first-degree sexual abuse—two counts each related to L and A, and four counts related to J. At trial, the state elicited testimony from the CARES evaluators who had examined the three girls. Each of the three evaluators testified, with respect to the girl whom she had examined, that she had made a diagnosis of sexual abuse. Each evaluation was based on a physical examination of the child and family and social histories obtained from an interview of the child and other sources. Dr. Reiss, who had

evaluated A, testified that A's physical examination was "completely normal." The other two evaluators gave similar testimony concerning the other girls.

When the prosecutor asked Reiss about her diagnosis of A during the state's case-in-chief, defense counsel objected and asked a question in aid of objection:

"[DEFENSE COUNSEL]: Doctor, the medical examination, the physical examination as I understand it was completely normal?

"THE WITNESS: That's correct.

"[DEFENSE COUNSEL]: And the other information that you received concerning [A] and her experiences would be, basically, what [A] had told you, correct?

"THE WITNESS: That's correct, it's what she told me.

"[DEFENSE COUNSEL]: So your diagnosis then is based solely on what she told you?

"THE WITNESS: No, that's not correct.

"[DEFENSE COUNSEL]: Well, can you point to anything in the physical examination that is supportive of what she said?

"[THE PROSECUTOR]: Judge, I object to this. This is not a proper objection to this witness's testimony.

"[DEFENSE COUNSEL]: It's not a proper diagnosis, Your Honor."

At that point, the court called counsel to the bench for an unrecorded conference, after which the court stated, "For the record, your objection to the witness rendering an opinion regarding the witness rendering a diagnosis is overruled." Defendant did not object to the diagnosis testimony of the other evaluators.

The jury convicted defendant of the two counts related to A and acquitted him of the remaining counts before it.[1] The trial court sentenced him to 75 months in prison and imposed a compensatory fine of $10,000, payable to the victim. Defendant appealed. In 2003, this court affirmed the judgment without opinion, and the Supreme Court denied review.

---

[1] One count had been dismissed on the state's motion before trial.

Defendant later filed a habeas corpus claim in federal court, alleging that he had been denied effective assistance of appellate counsel because, among other things, his appointed counsel had not argued on direct appeal that the trial court had erred in allowing the state's witnesses to testify that they had diagnosed the complainants with sexual abuse. The United States District Court initially ruled that that claim was procedurally defaulted, but the Ninth Circuit reversed and remanded to the district court to consider the claim on the merits. *Wells v. Howton*, 409 Fed Appx 86 (9th Cir 2010).

While the habeas case was pending before the Ninth Circuit, the Oregon Supreme Court issued its decision in *Southard*. It later issued its decision in *Lupoli* while defendant's habeas case was pending on remand.

On remand, the federal district court concluded that defendant's appellate counsel had "neglected and abandoned" him. *Wells v. Howton*, 2011 WL 5999356 *2 (Aug 22, 2011). It also concluded that, in light of *Southard* and *Lupoli*, defendant was prejudiced by his counsel's failure "to pursue a viable theory on his behalf that was subsequently adopted by the Oregon courts." *Id.* at *4. The court ordered the State of Oregon to provide defendant with a new direct appeal with competent counsel. The case is now before us in that posture.

Defendant raises three assignments of error. In the first, he challenges the admission into evidence of Reiss's testimony concerning her diagnosis of A as having been sexually abused. In his second assignment, defendant argues that the trial court erred in failing to merge the two convictions, asserting that both underlying offenses were part of the same criminal episode. Finally, defendant challenges the imposition of the $10,000 compensatory fine, arguing that there is no evidence that A had incurred any pecuniary loss.

Because it is dispositive, we begin and end with defendant's first assignment of error. In *Southard*, the Supreme Court held that, if there is no physical evidence of abuse, a diagnosis of sexual abuse is inadmissible under OEC 403 if it "does not tell the jury anything that it could not have

determined on its own" because the risk of unfair prejudice outweighs the probative value of the diagnosis. 347 Or at 142. In *Lupoli*, the court held that an expert witness's testimony explaining why the expert believed a child's report of sexual abuse constituted an impermissible comment on the child's credibility. 348 Or at 362-63. The state concedes that Reiss's diagnosis testimony was inadmissible under *Southard* and *Lupoli*. It argues, however, that defendant failed to preserve the error. Although the state acknowledges that we have recognized similar unpreserved claims as plain error, it argues that, given the unusual procedural history of this case, defendant's current appeal should be evaluated by applying the law as it existed at the time of his original appeal in 2003. Viewed in that light, the state argues, the error is not plain because it was not "obvious" in 2003 that the evidence in question was inadmissible. Indeed, the state asserts, at that time, this court and the Supreme Court were routinely denying even preserved claims of error of the sort in question.

Even if the error is plain, the state contends, we should not exercise our discretion to correct it. The state remonstrates that post-conviction relief is not intended to reward successful petitioners with better legal outcomes than they would have obtained had they received effective assistance of counsel in the first instance. According to the state, if we review defendant's assignment of error under current legal standards—that is, under *Southard* and *Lupoli*—we would grant defendant a windfall by placing him in a better position than he would have occupied had his original counsel not been deficient.

The state urges us not to correct the error for two other reasons. First, it argues that, even if defendant had preserved a *Southard* objection to Reiss's testimony, he later waived the objection by failing to object to the testimony of the other two CARES evaluators. Finally, the state argues that any error by the trial court was harmless. In the state's view, the fact that the jury acquitted defendant of the charges involving J and L shows that it was not swayed by the diagnosis testimony.

We agree with that state the defendant's objection at trial was not sufficient to preserve the issue that he raises on appeal. To preserve an issue, a party must "provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Defendant's objection that Reiss's testimony was "not a proper diagnosis" was not sufficiently specific to call to the trial court's attention the issue that defendant now raises on appeal. To the extent that defendant's counsel may have articulated a more specific objection during the unrecorded bench conference, the failure to make a record of that objection defeated preservation. *Cf. Gray v. Salem-Keizer School District*, 139 Or App 556, 562, 912 P2d 938, *rev den*, 323 Or 265 (1996) (noting that we could not determine whether the plaintiff had preserved an issue, because the record on appeal did not include a transcript of the oral arguments to the trial court).

Nevertheless, we conclude that it is appropriate to exercise our discretion to review for plain error. We may review an unpreserved error if it is apparent on the face of the record—that is, if it is an error of law, if it is "obvious, not reasonably in dispute," and if we need not go outside the record to identify the error or choose between competing inferences. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Under *Jury*, 185 Or App at 136, we determine plain error by reference to "the law existing at the time the appeal is decided," not at the time that the allegedly erroneous ruling was made. In deciding whether to exercise our discretion to correct plain error, we consider a number of factors, including

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."

*Ailes*, 312 Or at 382 n 6.

As noted, the state contends that, in this case, we should determine whether admission of Reiss's diagnosis testimony was plainly erroneous as of the time of defendant's original appeal, lest defendant receive a windfall. We disagree. As we explained in *Jury*:

> "Error apparent on the face of the record is merely a sub-species of error generally. Error, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial. Consequently, the same must be true of error apparent on the face of the record."[2]

185 Or App at 136 (footnote omitted). As this case stands before us now, it is in the posture of a direct appeal—regardless of how much time has passed since defendant's trial and the procedural path the case has taken getting to this point. Myriad factors can influence how quickly cases will be resolved on appeal, such as whether parties have moved for leave to file late appeals or for extensions of time to file briefs, the extent of the court's backlog of cases under advisement, the complexity of a particular case, and whether this court is reviewing after remand from the Supreme Court. Regardless of what factors influence the timing of a particular decision, we apply the law as it exists at the time we decide the appeal, not the law as it might have been understood at some earlier time at which the appeal might have been decided had it been resolved more quickly. We see no reason to apply a different principle when a defendant gets a new appeal after having successfully petitioned for collateral relief.

Applying *Southard* and *Lupoli* to this case, we readily conclude—as the state concedes we must if we apply those cases—that the trial court erred in allowing Reiss to testify about her sexual-abuse diagnosis.

We next consider whether to exercise our discretion to correct the error. It may be true that, as a practical matter, defendant will receive a windfall if we apply the law as

---

[2] As we noted in *Jury*, there are exceptions to that general rule, such as when applying a law in effect at the time of an appeal would create an *ex post facto* violation, or when the legislature specifies a particular effective date for a statute. 185 Or App at 136 n 1.

it is now stands, because he will receive a benefit that he would not have received had his original counsel performed adequately. But it is not the sort of windfall that would have occurred in the cases on which the state relies, *Lockhart v. Fretwell*, 506 US 364, 113 S Ct 838, 122 L Ed 2d 180 (1993), and *Brock v. Baldwin*, 171 Or App 188, 14 P3d 651 (2000), *rev den*, 332 Or 56 (2001), in support of its contention that we should not exercise our discretion to correct the error in this case.

In *Brock*, the petitioner received post-conviction relief on the ground that the criminal trial court had used the wrong criminal history score on five of the petitioner's eight convictions. The post-conviction court vacated all eight sentences and remanded the entire case for resentencing. We rejected the petitioner's argument on appeal that the post-conviction court should have vacated only the five erroneous sentences. We observed that the sentencing court could have reached the same total sentence in all events by, for example, imposing departure sentences on the convictions for which the correct criminal history score was used. We held that, if only the five erroneous sentences were vacated, "such a result would grant petitioner more than 'relief' from ineffective assistance of counsel; it would give him a windfall consisting of the possibility of a more favorable overall term of imprisonment than he would have received if his attorney had timely objected to the sentencing error." 171 Or App at 197.

In *Lockhart*, a federal habeas corpus case, the respondent, who had been sentenced to death, argued that his counsel had been ineffective for failing to raise a case that, at the time of his sentencing, would have spared him the death penalty. By the time of the habeas action, that case had been overruled. The Supreme Court held that the respondent had not been prejudiced by his counsel's failure to raise the case. The Court acknowledged that, had counsel raised the case, the outcome likely would have been different—the respondent would have been sentenced to life in prison instead of death. But it explained that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." 506 US at 369.

The Court stated that counsel's ineffective assistance merely "deprived [the] respondent of the chance to have the state court make an error in his favor." *Id.* at 371.

In both *Brock* and *Lockhart*, the windfall would have been to deprive the sentencing authority of the opportunity to impose the total sentence that it deemed appropriate and that was permissible under the law properly construed. In other words, the windfall would have allowed the *Brock* petitioner and the *Lockhart* respondent to *evade* the correct application of sentencing laws. Here, the "windfall" for defendant is that he will receive a trial in which the state will not be permitted to introduce evidence that is inadmissible under the law construed in *Southard* and *Lupoli.* In other words, defendant's "windfall" consists of a *correct* application of the law. The state has not persuaded us that that is the sort of windfall we ought to avoid. Indeed, the state's approach would have us focus "solely on mere outcome determination," without considering whether applying the law as it was understood in 2003 would result in a fair and reliable proceeding. In essence, the state would have us apply the law in a manner that we now know to be incorrect. We decline to do so.

We reject without discussion the state's contentions that defendant waived any objection to Reiss's testimony by failing to object to the testimony of the other two CARES evaluators and that the error in admitting Reiss's testimony was harmless. For the reasons articulated in *State v. Merrimon*, 234 Or App 515, 522, 228 P3d 666 (2010), and *State v. Lovern*, 234 Or App 502, 513-14, 228 P3d 688 (2010), we exercise our discretion to correct the error. Because we do so, we need not address defendant's remaining assignments of error.

Reversed and remanded.