Argued and submitted October 6, 2010, reversed and remanded June 29, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS MICHAEL KELLY,
*Defendant-Appellant.*

Clatsop County Circuit Court
061238; A139810

260 P3d 551

Raymond S. Tindell argued the cause and filed the brief for appellant.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for multiple counts of first-degree sexual abuse, ORS 163.427, and first-degree sodomy, ORS 163.405. He assigns error to, among other things, the trial court's admission of an expert's medical diagnosis that complainant had been sexually abused. That diagnosis was rendered in the absence of any physical evidence of abuse. Consistently with *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), we conclude that the trial court's admission of that diagnosis was error. Accordingly, we reverse and remand.

Defendant was charged with sexually abusing and sodomizing his granddaughter, C, over a period of years. At the time of the alleged abuse, C lived with her father and his girlfriend, Reaves, but would often stay with defendant and his wife on weekends. At some point, Reaves became suspicious of defendant's relationship with C. Reaves had been a victim of abuse herself, and she routinely asked C and her other children whether they had been treated inappropriately by anyone. One day, she asked C three times whether "anybody was doing anything to her" that Reaves should know about. C denied each time that anything inappropriate was being done to her. After Reaves provided reassurances, C confided that defendant had sexually abused her. Reaves comforted C and told her that she, too, had experienced sexual abuse as a child. Reaves then called the police. An officer arrived at the family residence and interviewed C. Reaves was present for and participated in the interview.

C was later evaluated at "The Lighthouse," a child abuse assessment clinic. That evaluation was based on an interview with C, a review of her social and medical history as provided by her father and Reaves, and a physical examination. That examination, which was conducted by Dr. Little, revealed no physical evidence of abuse. Nonetheless, based on the interview with C and the history that had been provided, Little diagnosed C with sexual abuse.

Before trial, defendant filed a motion to limit or exclude the expert testimony of Little, citing "OEC 104, OEC 401, OEC 403, [and] OEC 702." Defendant argued, among

other things, that the "[t]estimony concerning a 'diagnosis' of child sexual abuse" should be excluded. More precisely, defendant argued that the expert testimony did not meet the foundational requirements for scientific evidence as articulated in *State v. O'Key*, 321 Or 285, 290, 899 P2d 663 (1995), and *State v. Brown*, 297 Or 404, 438, 687 P2d 751 (1984), and that the testimony, moreover, would constitute "an impermissible comment on the credibility of another witness." The trial court denied the motion in part.[1]

Defendant also filed a pretrial motion to exclude the testimony of the complainant, C, on the ground that it was inherently unreliable. Defendant argued that, during the initial questioning of C, Reaves and the police officer employed suggestive interviewing techniques that contaminated C's memory and tainted her subsequent testimony. Defendant also maintained that C's history of behavioral problems, mental illness, and lying—including a prior false accusation of abuse—further rendered her testimony "wholly unreliable." The trial court denied that motion as well.

At trial, the state presented the testimony of Little, who recounted his diagnosis of sexual abuse. The state also offered testimony from C, C's father, C's brother, Reaves, the interviewing officer, and various law enforcement or investigatory personnel. Additionally, the state presented evidence that defendant's semen was found on chair cushions in his basement, where the sexual abuse was alleged to have occurred, and that a videotape containing pornography, which defendant allegedly played for C, was found in the basement.

Defendant, on the other hand, offered the testimony of some of C's former teachers, psychiatrists who had evaluated her, and an expert psychologist. Defendant's case was, in large part, focused on C's tumultuous psychosocial history, the possibility that her memory had been corrupted by suggestive questioning, and her past difficulties with telling the truth.

At the close of the state's case, and again at the conclusion of all the evidence, defendant moved for a judgment of

---

[1] The trial court granted part of the motion not relevant to the issues on appeal.

acquittal on all charges. The trial court denied both motions, and the jury convicted defendant of 12 counts each of sodomy in the first degree and sexual abuse in the first degree, but acquitted him of the remaining 18 counts.[2]

On appeal, defendant first assigns error to the trial court's denial of his motion to exclude the testimony of C. He argues that suggestive pretrial questioning rendered C's testimony unreliable and that the trial court therefore should have excluded it from evidence. Defendant analogizes C's testimony to other categories of evidence that may be excluded on the basis of unreliability. *See, e.g., State v. Classen*, 285 Or 221, 226, 590 P2d 1198 (1979) ("Evidence law has long provided for excluding certain evidence as a class when its questionable reliability vitiates the value of its possible truthfulness in the particular case, apart from any question of constitutional law. One familiar example is the exclusion of coerced confessions; others are the exclusion of evidence obtained by polygraph tests, hypnosis, or 'truth drugs.' ").

We rejected an analogous argument in *State v. Bumgarner*, 219 Or App 617, 184 P3d 1143, *rev den*, 345 Or 175 (2008), *cert den*, 555 US 1101, 129 S Ct 927, *adh'd to as modified on recons*, 229 Or App 92, 209 P3d 857 (2009). There, the defendant was convicted of various sex crimes involving a four-year-old child. On appeal, he challenged the propriety of admitting the victim's testimony, arguing that her memory had been tainted by suggestive pretrial questioning. *Id.* at 627. The defendant asserted that, where there is evidence that improper interrogations may have undermined the reliability of a child witness's memory, a "taint" hearing was required to determine the admissibility of the child's testimony. *Id.* at 629-32. We declined to adopt such an approach, reasoning that it "conflated the competency of the witness with the reliability of potential testimony that the witness might give." *Id.* at 633. We concluded that "the trier of fact, rather than the judge, is in the best position to determine the effect, if any, of improper interviewing techniques on a witness's credibility." *Id.* Consequently, we held that the

---

[2] Defendant assigns error to the trial court's denial of his motion for judgment of acquittal. We reject that contention without discussion.

trial court did not abuse its discretion in admitting the victim's testimony. *Id.* at 634.

The same reasoning applies here. Defendant does not argue that C is not competent to testify but, instead, challenges the reliability of her testimony. That assessment is essentially a question of credibility for the trier of fact to weigh in its deliberations rather than a question of admissibility for the court to determine in the first instance. Thus, the trial court properly denied defendant's motion to exclude C's testimony.

Defendant next assigns error to the trial court's admission of Little's medical diagnosis of sexual abuse in the absence of any physical evidence of abuse. Defendant argues, among other things, that admission of Little's diagnosis constituted an impermissible comment on the credibility of another witness, namely, C. Although *State v. Southard*, 347 Or 127, 218 P3d 104 (2009) (expert's diagnosis of sexual abuse made in the absence of physical evidence is inadmissible under OEC 403), and *Lupoli*, 348 Or 346 (expert's diagnosis of child sexual abuse made in the absence of physical evidence is inadmissible as a comment on the credibility of another witness), had not been decided when defendant filed his opening brief, defendant cited those cases at oral argument in support of his contentions.

The state responds that defendant did not preserve an argument that Little's diagnosis was unfairly prejudicial under OEC 403 and did not expressly assign that aspect of the trial court's decision as error. In any event, the state contends that any error in admitting the diagnosis was harmless in light of the other evidence presented at trial.[3]

Regardless of whether defendant preserved an argument that the expert's diagnosis was unfairly prejudicial under OEC 403, we have held that the admission of an expert's diagnosis of sexual abuse in the absence of physical evidence constitutes plain error. *See, e.g., State v. Lovern*, 234 Or App 502, 228 P3d 688 (2010); *State v. Merrimon*, 234 Or App 515, 228 P3d 666 (2010). Nonetheless, we need not

---

[3] The state did not advance a harmlessness argument in its responding brief but did so at oral argument.

address whether defendant preserved his argument under OEC 403 because defendant unquestionably preserved his argument that Little's diagnosis constituted impermissible vouching for the credibility of another witness.

In *Lupoli*, the Supreme Court concluded that an expert's diagnosis of child sexual abuse, in the absence of physical evidence of abuse, "necessarily was based on [the expert's] assessment of the child's believability. When [the expert] then was asked the basis for her diagnosis, she was implicitly declaring, with each statement and description, why she had found [the child] to be credible." 348 Or at 362. Consequently, the court held that the expert's testimony amounted to impermissible vouching.

In subsequent cases, we have held that, even where an expert does not explicitly vouch for the child victim's credibility, a diagnosis of sexual abuse made in the absence of physical evidence constitutes impermissible vouching. *State v. Bainbridge*, 238 Or App 56, 59, 241 P3d 1186 (2010); *see also State v. Davilia*, 239 Or App 468, 475-76, 244 P3d 855 (2010) (following *Bainbridge*); *State v. Cordova-Contreras*, 239 Or App 279, 282-83, 245 P3d 147 (2010) (same).

This case fits squarely within that precedent. Although Little did not explicitly vouch for C's credibility, his diagnosis was made without any physical evidence of abuse and, therefore, was necessarily based on his assessment of C's credibility. Thus, it constituted impermissible vouching. The trial court erred in admitting the diagnosis.

We reject the state's contention that that error was harmless. "[A] harmless error is one that has 'little likelihood' of affecting the verdict." *Lupoli*, 348 Or at 366 n 11. Here, there was no physical evidence of abuse. The state's case was built around the believability of C's allegations. It offered no other direct evidence that the abuse occurred. Defendant's theory of the case, by contrast, was that C had fabricated the allegations in response to suggestive questioning and that, in light of her psychological and behavioral history, her testimony simply could not be believed. In sum, the outcome of the case hinged on the credibility of C. Under those circumstances, we cannot say that the diagnosis of sexual abuse was unlikely to have affected the verdict. *See, e.g., id.* ("In this

case, there was no physical evidence of abuse; the children's credibility, therefore, was paramount. In that circumstance, we cannot conclude that there was 'little likelihood' that the experts' testimony affected the verdict."). Accordingly, defendant's convictions must be reversed and the case remanded for a new trial.

Reversed and remanded.