Argued and submitted July 28, 2011, reversed and remanded February 29, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHEN EDWARD COX, SR.,
*Defendant-Appellant.*

Lake County Circuit Court
070041CR; A141564

273 P3d 299

Jedediah Peterson, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services. Stephen Edward Cox, Sr., filed the supplemental brief *pro se.*

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals a judgment of conviction for three counts of first-degree sodomy, ORS 163.405, five counts of first-degree sexual abuse, ORS 163.427, three counts of first-degree rape, ORS 163.375, one count of second-degree rape, ORS 163.365, two counts of first-degree unlawful sexual penetration, ORS 163.411, and one count of second-degree sodomy, ORS 163.395. The two complainants, E and K, were defendant's wife's grandchildren, who were living with defendant and his wife when defendant allegedly committed the crimes. Because it is dispositive in this case, we address only one of defendant's assignments of error—*viz.*, that the trial court committed plain error in admitting an expert's diagnosis that one of the complainants, K, had been sexually abused, because the diagnosis was not based on any physical evidence of abuse. In that assignment, defendant contends that, because the erroneously admitted diagnosis affected the jury's decision to convict him on the charges involving E, who had not been diagnosed as having been sexually abused, all of defendant's convictions, not just those involving K, should be reversed. We agree with defendant, exercise our discretion to correct the court's plain error, and, accordingly, reverse and remand.

We take the facts from the pertinent portions of the record. As a result of E and K's mother's inability to adequately care for them, E—who was about five years old at the time—and K—who was about three years old—began living with their maternal grandmother and defendant. E and K testified at trial that, shortly thereafter, defendant began sexually abusing each of them.

According to E, defendant's alleged abuse of her began with him touching her breasts and vagina and forcing her to touch his penis and later escalated to him forcing her to perform oral sex on him weekly; the incidents of alleged abuse occurred both in the home and outside of it, including in defendant's truck while he was hauling garbage for his garbage-disposal business. E testified that, on one occasion in particular, defendant brought E into a shop building that defendant had recently built, set her on a bucket, and forced her to perform oral sex on him and that, because defendant

had failed to adequately lock the shop's door, K walked in and saw defendant with his pants down and E kneeling in front of him, which the children's grandmother later explained to K was merely defendant showing E a spider bite on his leg.[1] According to E's testimony, defendant eventually began engaging in sexual intercourse with her once or twice a week when she was about 10 years old.

E also testified that, throughout the years that defendant had abused her, he sought to prevent her from disclosing his actions by buying her various gifts, including a horse, and by threatening to kill the children's grandmother and K if E told anyone about the abuse. Despite those threats, E eventually disclosed the alleged abuse in 2005 when she was 18 years old; however, she never talked with K about the alleged abuse that she had suffered.

Defendant's alleged abuse of K began in a similar fashion according to K's testimony; defendant began touching K's penis when K was about five years old. Eventually, according to K, defendant forced him to perform oral sex on defendant "hundreds of times" in defendant's shop and in defendant's truck while he was hauling garbage. The alleged abuse persisted until K was 12 years old, and, according to K, throughout that time, defendant threatened to kill the children's grandmother if K ever disclosed the abuse.

After K learned from police investigations that E had disclosed being abused by defendant and, notwithstanding that disclosure, defendant had not killed their grandmother, K, who was then roughly 16 years old, disclosed defendant's alleged abuse of him about a month after E's disclosure in 2005. Shortly thereafter, Lustig-Butts, a medical examiner at Klamath Lake CARES—a child-abuse assessment center—conducted a physical evaluation of K to determine if he had been physically or sexually abused by defendant. Despite a lack of physical findings indicating that K had been abused, Lustig-Butts nonetheless diagnosed "with reasonable medical certainty that [K] had been the victim of child sexual abuse" based on K's history and the disclosures

---

[1] K also testified that he had observed defendant calling E "baby girl" and slapping her on her bottom, and had overheard defendant and E talking about him having impregnated her.

that K had made to a forensic child interviewer about the abuse.

The state charged defendant with five counts of first-degree rape, two counts of first-degree unlawful sexual penetration, one count of first-degree sodomy, and one count of first-degree sexual abuse involving E; it charged defendant with three counts of first-degree sodomy and four counts of first-degree sexual abuse involving K. The pivotal issue at trial was the credibility of E and K—a point that the prosecutor highlighted in his closing argument:

> "To this day these kids are still messed up; they are still screwed up by what happened to them. And it is all the Defendant's fault * * *. These kids told CARES—you [watched] the video—they came in here * * * and they looked you in the eye and they told you. Either they are telling the truth or the Defendant is telling the truth. You have to decide which of those it is.

> "He is saying, 'I am not ever alone with kids—maybe twice in my life.['] They are saying, 'This man repeatedly sexually abused me.' * * * [Defendant has] to have you believe that they are lying; that they decided together * * * to make up this lie and they just had a really, really bad time of it because they cannot tell you the specifics * * *. No. It is exactly what the experts told me; repeated child abuse."

Following the trial, a jury convicted defendant on all of the counts save one—*viz.*, a first-degree rape count involving E.

On appeal, defendant argues that, although he did not object at trial to the admission of Lustig-Butts's testimony regarding her diagnosis of K as having been sexually abused, the court nevertheless committed plain error under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), in admitting that testimony and, therefore, his convictions should be reversed. In response, the state contends that, even if the admission of the diagnosis was plain error, the erroneously admitted diagnosis only affected defendant's convictions involving K—not those involving E—and, therefore, the convictions involving E should be affirmed. As explained below, defendant has the better of the argument.

We begin with the convictions involving K. In *Southard*—decided about eight months after defendant's trial—the Oregon Supreme Court held that a diagnosis of sexual abuse without physical evidence of abuse is generally inadmissible under OEC 403 because the prejudice to a defendant resulting from the admission substantially outweighs the probative value of the diagnosis. 347 Or at 142. The admission of Lustig-Butts's diagnosis squarely violates that holding, and, because the diagnosis directly related to the credibility of K—and thereby likely affected the jury's decision to convict defendant for the crimes involving K—we exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 & n 6, 823 P2d 956 (1991), to correct the court's error in admitting it. *See, e.g., State v. Lovern*, 234 Or App 502, 512-14, 228 P3d 688 (2010) (rejecting state's argument that the defendant made a tactical decision not to object to admission of diagnosis of sexual abuse without physical evidence of abuse and exercising *Ailes* discretion to remedy trial court's plain error in admitting the diagnosis); *State v. Merrimon*, 234 Or App 515, 522, 228 P3d 666 (2010) (same). Accordingly, we reverse and remand the convictions involving K.

We turn to the remaining issue, *viz.*, whether the erroneous admission of K's diagnosis requires reversal of defendant's convictions involving E. Absent physical findings of abuse, an expert's diagnosis of child sexual abuse is inevitably the product of the expert's assessment of the credibility of the child and the child's story. *State v. Lupoli*, 348 Or 346, 362, 234 P3d 117 (2010); *see also State v. Kelly*, 244 Or App 105, 111, 260 P3d 551 (2011) ("[E]ven where an expert does not explicitly vouch for the child victim's credibility, a diagnosis of sexual abuse made in the absence of physical evidence constitutes impermissible vouching."). Therefore, in keeping with the general principle that a trial witness may not testify about the credibility of another trial witness, *State v. Keller*, 315 Or 273, 284-85, 844 P2d 195 (1993), the effect of an expert's assessment of credibility resulting from a diagnosis of sexual abuse is not limited to the child being diagnosed. *See State v. Freitas*, 243 Or App 231, 238, 259 P3d 46 (2011) (stating that reversal of convictions involving two victims in *Southard*, despite the fact that the erroneously admitted diagnosis of sexual abuse involved only one of the

victims, was proper because "the risk of prejudice that was of concern in *Southard*—that the diagnosis may have caused the jury to inappropriately defer to the expert's implicit conclusion that [one victim's] reports of abuse were credible—inhered in the jury's disposition of the charges relating to both victims in that case"). Accordingly, the critical inquiry with regard to defendant's convictions involving E is whether Lustig-Butts's erroneously admitted diagnosis—and her implicit expert opinion underlying that diagnosis that K's report of abuse was credible—also constituted impermissible vouching for E's testimony about her alleged abuse, such that the diagnosis likely caused the jury to inappropriately defer to Lustig-Butts's credibility determination in deciding whether defendant was guilty of the charges involving E. Put differently, because—as we concluded above—K's diagnosis likely affected the jury's conclusion about the credibility of K's testimony concerning his abuse, did that conclusion have the ancillary consequence of affecting the jury's determination of whether E's testimony about her abuse was also credible?

Here, for at least three reasons, K's credibility was inextricably tied to E's credibility and, thereby, likely served an important role in the jury's determination of the truthfulness of E's testimony.[2] First, K testified to a pattern of abuse that mimicked in a number of respects the abuse to which E had testified: (1) the alleged abuse of both happened around the same time when the victims were similar ages; (2) the alleged abuse occurred in similar locations, including defendant's shop and in defendant's truck while he was hauling garbage; (3) the alleged abuse progressively escalated from defendant touching their respective genital areas on numerous occasions to each victim eventually performing oral sex on defendant—a typical "grooming" pattern of abuse; and (4) defendant allegedly made threats to both of the victims that he would kill their grandmother if they disclosed his actions.[3] Second, the prosecutor's comments during his closing argument purposely joined K and E's credibility into a

---

[2] As mentioned above, the case against defendant reduced to a "swearing match" that hinged on the jury's determination of the credibility of the victims' testimony.

[3] The consistency of the testimony of K and E takes on additional weight as a consideration favoring our conclusion that the erroneously admitted diagnosis

single consideration for the jury and strongly suggested that Lustig-Butts's diagnosis showed that both victims were telling the truth:

> "Either *they* are telling the truth or the Defendant is telling the truth. You have to decide which of those it is.
>
> "* * * [Defendant has] to have you believe that *they* are lying; that *they* decided together * * * to make up this lie and *they* just had a really, really bad time of it because *they* cannot tell you the specifics * * *. No. *It is exactly what the experts told me; repeated child abuse.*"

(Emphasis added.) Finally, and most importantly, K's testimony cross-corroborated various aspects of E's testimony regarding her abuse; he recounted at trial one of the incidents during which E was allegedly abused by defendant—*viz.*, when K walked in on E performing oral sex on defendant in his shop—and testified that he had witnessed defendant calling E "baby girl" and slapping her bottom.

For those reasons, we conclude that the erroneously admitted diagnosis impermissibly prejudiced the jury's assessment of the credibility of both K and E—a conclusion that does not conflict with our recent decision in *Freitas*. In *Freitas*, the defendant was convicted by a jury of numerous sexual crimes that he had committed against his daughters, B and C. 243 Or App at 233. On appeal, he argued that the trial court had committed plain error in admitting the testimony of a CARES doctor diagnosing B as having been sexually abused by the defendant, because the doctor had not found any physical evidence of abuse. We agreed that the admission of that testimony was erroneous under *Southard* and exercised our *Ailes* discretion to correct the trial court's plain error in admitting it. As a result, we reversed the convictions regarding the crimes committed against B.

However, because the crimes involving B and C had been tried together, we then had to address whether the erroneous admission of the diagnosis about B also required the

---

likely affected the jury's decision to convict defendant for the crimes involving E, because E reported her alleged abuse a month before K reported his and E testified that she had never talked to K about her alleged abuse. Therefore, it is even more likely that the jury would consider the credibility of K's testimony as being indicative of the credibility of E's testimony.

reversal of the defendant's convictions for crimes committed against C—who had not been evaluated for sexual abuse. *Id.* at 234. Focusing on whether the erroneously admitted diagnosis affected the jury's decision to convict the defendant for the latter crimes, we concluded that the error did not require reversal of the convictions involving C because

> "the state relied on C's own in-depth and emotional testimony, other testimony that corroborated C's allegations, and [expert] testimony explaining why it is common for children like C to delay disclosure of, or to even initially deny but later disclose, childhood sexual abuse. In other words, the state's case as it related to C would not have been different had the inadmissible evidence been excluded."

*Id.* at 237 (footnote omitted). Importantly, we further noted that, because B's disclosures to the CARES staff during her evaluation did not include any reference to C and neither B nor C testified about any knowledge of the abuse of the other—and, in fact, B was not aware that C had been abused until C disclosed the abuse roughly seven years after B's disclosure—the CARES doctor's vouching for B's credibility resulting from the erroneous admission of B's diagnosis did not present "a substantial risk that the jury was prejudiced by that testimony in evaluating the credibility of *both* B and C." *Id.* at 238 (emphasis in original).

The circumstances presented in this case are materially distinguishable from those in *Freitas*. Importantly, in contrast to *Freitas*, K testified about the alleged abuse that E had suffered when he recounted the incident during which he had walked into the shop when E was performing oral sex on defendant; the alleged abuse of K and E occurred for a number of years while both were living with defendant and displayed a number of material similarities, including the locations in which the alleged abuse occurred; and the prosecutor argued that the credibility of K and E were inextricably linked.

Therefore, the erroneously admitted diagnosis in this case presented a substantial risk that the jury was prejudiced in evaluating the credibility of both K and E, and,

accordingly, we exercise our discretion to correct the court's plain error as it pertains to all of defendant's convictions.

Reversed and remanded.