Argued and submitted July 7, 2011, reversed and remanded October 24, 2012, petition for review denied March 28, 2013 (353 Or 428).

B. A.,
an individual proceeding under an assumed name,
*Plaintiff-Respondent*,

*v.*

Edward WEBB,
in his individual capacity,
*Defendant-Appellant.*

Marion County Circuit Court
07C19633; A140608

289 P3d 300

Matthew G. McHenry argued the cause for appellant. With him on the briefs were Michael R. Levine and Levine & McHenry LLC.

Gilion C. Dumas argued the cause for respondent. With her on the brief was O'Donnell Clark & Crew LLP.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant appeals a monetary judgment against him for the intentional torts of sexual battery of a child and intentional infliction of severe emotional distress. Defendant contends, *inter alia*, that (1) the trial court erred in allowing plaintiff's two expert witnesses to provide opinion testimony regarding plaintiff's credibility and (2) the admission of the experts' diagnoses that plaintiff had been sexually abused, in the absence of physical findings, constituted plain error under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), and *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).[1] We conclude that the trial court did so err and, accordingly, reverse.[2]

We state the facts necessary to provide context for the testimony at issue on appeal. In 2008, when she was 24, plaintiff filed a complaint against defendant, alleging that he had subjected her to sexual and physical abuse when she was between the ages of 11 and 14. Defendant had been married to plaintiff's mother during the time of the alleged misconduct. Plaintiff alleged, among other things, that defendant would dress himself in women's clothing—including, particularly, nylon stockings—and sometimes, while so clothed, defendant would "play" with plaintiff by tying her up and encouraging her to try to escape. Plaintiff further alleged that, during the episodes when plaintiff was restrained, defendant would sometimes straddle her and make a "rocking motion" while on top of her. Plaintiff also alleged that defendant encouraged her to wear nylons and, when she did, he would rub her legs. Defendant categorically denied all allegations.

Defendant moved *in limine* to prohibit "any mention, evidence, argument or other reference * * * [t]hat Plaintiff's expert witness has determined" that "any fact alleged by Plaintiff in her Complaint to be true." Defendant supported the motion "upon the ground that the information is irrelevant, and/or usurps the prerogative of the trier of the facts." The court denied defendant's motion and ruled that,

---

[1] The judgment in this case was entered before *Southard* was decided.

[2] Our disposition obviates the need to reach defendant's other assignments of evidentiary error.

"so long as the Plaintiff[ ] establish[es] a proper foundation for the testimony, the witness will be entitled to offer her opinions on those issues."

Plaintiff testified at trial regarding the above-outlined allegations. Plaintiff also provided testimony from two expert witnesses, plaintiff's mental health counselor, Dawn Hill, and Dr. Cynthia Steinhauser, who had administered a psychosexual evaluation of plaintiff. Plaintiff did not produce any physical evidence of the alleged abuse.

Critical to our analysis and disposition is Hill's testimony that, in her expert opinion, plaintiff was credible and, based on that determination, she had diagnosed plaintiff as being a victim of childhood sexual abuse. Specifically, Hill testified as follows:

"[PLAINTIFF'S COUNSEL]: Based upon your education, your training, your experience as a licensed professional counselor and therapist, and more importantly, based upon your time with [plaintiff], do you have an opinion, to a reasonable degree of probability, as a licensed professional counselor, of whether [plaintiff] is a victim of childhood sex abuse?

"[HILL]: Yes, I do. I believe she is.

"[PLAINTIFF'S COUNSEL]: Is there any doubt about that in your mind?

"[HILL]: No.

"[PLAINTIFF'S COUNSEL]: During your 37 visits with [plaintiff], did you get any indication that [plaintiff] is a malingerer?

"[HILL]: No.

"[PLAINTIFF'S COUNSEL]: That she is hallucinating?

"[HILL]: No.

"[PLAINTIFF'S COUNSEL]: That she has delusions?

"[HILL]: No.

"[PLAINTIFF'S COUNSEL]: Did you find the events that she chronicled to you over 37 visits to be consistent

with what you have seen in your experience the victims of childhood sex abuse go through?

"[HILL]: Yes.

"[PLAINTIFF'S COUNSEL]: And with regard to her symptoms and the diagnosis, which we will get to in just a minute that you made of [plaintiff], is your diagnosis and her symptoms consistent with victims of childhood sex abuse, based upon your experience?

"[DEFENSE COUNSEL]: Objection.

"[HILL]: Yes.

"[DEFENSE COUNSEL]: Leading.

"THE COURT: Overruled.

"* * * * *

"[PLAINTIFF'S COUNSEL]: Given that you made the diagnosis that [plaintiff is] a victim of childhood sex abuse, given that you've made the diagnosis that she suffers from post-traumatic stress syndrome, do you have an opinion, as her treating counselor, as to the cause of her post-traumatic stress syndrome?

"[HILL]: Yes, I do.

"[PLAINTIFF'S COUNSEL]: What is that opinion?

"[HILL]: Childhood sex abuse over a three-year period[.]

"* * * * *

"[PLAINTIFF'S COUNSEL]: You testified earlier you made the diagnosis that [plaintiff] is a victim of childhood sex abuse?

"[HILL]: Yes.

"[PLAINTIFF'S COUNSEL]: In order to make that diagnosis, did you happen to determine whether she was an accurate reporter—

"[HILL]: Yes.

"[PLAINTIFF'S COUNSEL]: —of what happened to her?

"[HILL]: Yeah.

"* * * * *

"[PLAINTIFF'S COUNSEL]: And in treating [plaintiff], did you see, Counselor Hill, one scintilla, one shred of evidence that would indicate she's malingering, or to use your phrase, [']making it up?[']

"[HILL]: No."

Later, on cross-examination, Hill testified, "In my education and experience over time, and based on my experience over ten years, I believe [plaintiff] to be credible." On redirect, plaintiff's counsel again asked Hill for her opinion regarding plaintiff's credibility:

"[PLAINTIFF'S COUNSEL]: You've been treating and dealing with people like [plaintiff] for ten years. Do you have any shred of concern, any doubt in your mind whatsoever, that what she told you is the absolute truth?

"[DEFENSE COUNSEL]: I'll object to that, Your Honor."

The court overruled the objection and allowed Hill to answer:

"[HILL]: I have no doubt.

"[PLAINTIFF'S COUNSEL]: Why?

"[HILL]: Just based on experience and education, there isn't anything that has led me to distrust what she's reported to me. And the—the whole relationship in counseling is based on trust, and the trust has to go both ways. It's not just them trusting me, it's me trusting them. And so based on that, * * * I believe that she has reported the truth.

"[PLAINTIFF'S COUNSEL]: And if you thought she was a liar, would you spend 37 hours with her?

"[HILL]: No."

Plaintiff's second expert witness, Steinhauser, echoed Hill's testimony in the following exchange:

"[PLAINTIFF'S COUNSEL]: And what [plaintiff] told you what happened to her, in your opinion, is that sex abuse?

"[STEINHAUSER]: Absolutely. * * *

"\* \* \* \* \*

"[PLAINTIFF'S COUNSEL]:  Did you reach a diagnosis as to [plaintiff's] conditions?

"[STEINHAUSER]:  Absolutely.

"[PLAINTIFF'S COUNSEL]:  To a reasonable degree of probability, as a licensed professional counselor, what is your diagnosis of [plaintiff]?

"[STEINHAUSER]:  First, sexual abuse of a child. Two, physical abuse of a child. And three, post-traumatic stress syndrome, chronic."

Further, on cross-examination, Steinhauser testified, "I believe that all of the evidence suggests that the events did occur as [plaintiff] described them." On redirect, Steinhauser again commented on plaintiff's credibility and further suggested that defendant was less likely to be credible:

"[PLAINTIFF'S COUNSEL]: And finally, in your opinion, as you testified on cross-examination, the events, as described by [plaintiff], the abuse she described, is it more likely than not absolutely true?

"[STEINHAUSER]:  Absolutely true.

"[PLAINTIFF'S COUNSEL]:  Any doubt in your mind?

"[STEINHAUSER]:  None whatsoever.

"[PLAINTIFF'S COUNSEL]: Based on 30 years of experience?

"[STEINHAUSER]: Thirty-three  [*sic*]  experience. Absolutely not one doubt in my mind.

"[PLAINTIFF'S COUNSEL]:  Thank you. No—

"[STEINHAUSER]:  What's more—

"[PLAINTIFF'S COUNSEL]:  —further questions.

"[STEINHAUSER]:  What's more—

"THE COURT:  Hang on. Hang on.

"[PLAINTIFF'S COUNSEL]: Do you want to finish your answer, Doctor?

"THE COURT:  Okay. Go ahead. You're done?

"[STEINHAUSER]:  I really don't think so.

"THE COURT:   Well, you can now.

"[STEINHAUSER]:   Okay. What I was going to say is, what's more likely is that an alleged perpetrator is going to lie about the abuse, rather than a victim—alleged victim lie about—or fabricate a story of abuse."

No physical evidence substantiated or corroborated plaintiff's allegations of abuse or Hill's and Steinhauser's diagnoses of physical and sexual abuse. Nor did plaintiff adduce testimony from any eyewitness to the purported abuse.

Defendant testified as the only witness for the defense and flatly denied all of plaintiff's allegations.

The jury returned a verdict for plaintiff, which included a money award of $52,960 in economic damages and $1.5 million in noneconomic compensatory damages. The jury further determined that plaintiff was entitled to recover punitive damages, and the court awarded plaintiff an additional $3 million in punitive damages. The trial court entered a general judgment against defendant. Defendant appeals.

Defendant contends, *inter alia*, that (1) the trial court erred in allowing plaintiff's two expert witnesses to provide opinion testimony regarding plaintiff's credibility, and (2) the admission of the experts' diagnoses that plaintiff had been sexually abused, in the absence of physical findings, constituted plain error under *Southard*.

On appeal, in support of his first assignment of error, defendant relies on *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983), *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988), "and their progeny," for the proposition that "blatant and repeated vouching for Plaintiff's credibility by her expert witnesses [is] reversible error." With respect to that assignment of error, defendant argues that his pretrial motion "functions as [an] objection sufficient to preserve error, even absent objection during trial." Defendant argues, in the alternative, that, even if we decide that his motion *in limine* was insufficient to preserve that issue for appeal, the error is apparent on the face of the record and we should exercise our discretion to consider and correct the error. With respect to his *Southard*-based assignment of error,

defendant acknowledges that his appellate contention was unpreserved, but he invokes plain error and urges that we exercise our discretion to consider and correct that error.

Plaintiff remonstrates that defendant's assignments of error are unpreserved and, in all events, do not establish error, much less plain error. We address plaintiff's substantive responses in detail later in this opinion.

As an initial matter, we agree with plaintiff that defendant failed to preserve the issues that he raises on appeal. Defendant's amorphous motion *in limine* did not alert the court to any specific objection, and defense counsel failed to contemporaneously object to the admission of the vouching testimony or sexual abuse diagnoses at trial. Nevertheless, for the reasons explained below, we conclude that the court plainly erred in allowing the two expert witnesses to comment on plaintiff's credibility. Moreover, the trial court also plainly erred in allowing those same experts to provide diagnoses of child sexual abuse in the absence of corroborating physical evidence of such abuse. We further determine that it is appropriate to exercise our discretion to review and correct the trial court's errors in those respects.

The exercise of our discretion to review and correct unpreserved error is a two-step process. We must first determine whether the asserted error is an "error of law apparent on the record." ORAP 5.45. In *Jury*, we explained that,

> "[f]or error to be considered apparent on the face of the record for purposes of ORAP 5.45, it must satisfy three criteria: (1) it must be legal error; (2) it must be 'apparent,' such that 'the legal point is obvious, not reasonably in dispute'; and (3) it must appear on the face of the record, such that we 'need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable.' *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990)."

185 Or App at 135. We further explained that "'error apparent' must be determined by reference to the law as of the time the appeal is decided." *Id.* at 136. If we conclude that the asserted error is plain, then, in the second step, we must determine whether to exercise our discretion to correct

it. In making that determination, we consider, among other factors,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

We first examine whether the trial court erred in admitting the testimony by both Hill and Steinhauser explicitly stating their opinions that plaintiff was truthful in her accounts of the alleged abuse. Defendant's position ultimately rests on the premise that, notwithstanding the absence of a contemporaneous objection, the trial court was nonetheless required, *sua sponte*, to cut off or strike the vouching testimony. Although "the universe of circumstances in which a trial court is compelled to act, in the absence of a motion or objection by a party, is extremely limited," *State v. Reynolds*, 250 Or App 516, 531, 280 P3d 1046 (2012) (Haselton, C. J., concurring in part, dissenting in part), the circumstances here fall within that "extremely limited" universe. *Id.*

The principle that a witness may not comment on the credibility of another witness is "obvious, and not reasonably in dispute." In *Middleton*, the Supreme Court stated:

> "We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness[.]"

294 Or at 438. In *Milbradt*, the Supreme Court emphatically reiterated that clear proscription:

> "We have said before, and we will say it again, but this time with emphasis—we really mean it—*no psychotherapist may render an opinion on whether a witness is credible in any trial conducted in this state.* The assessment of credibility is for the trier of fact and not for psychotherapists."

305 Or at 629 (emphasis in original).

Further, the trial court has an independent obligation to preclude or strike such testimony. The *Milbradt* court initially "suggested" that,

> "if counsel attempts to elicit similar testimony the trial judge, *sua sponte*, should summarily cut off the inquiry before a jury is contaminated by it."

*Id.* at 630. Thereafter, in *State v. McQuisten*, 97 Or App 517, 776 P2d 1304 (1989), we, citing *Milbradt*, held that "the trial court had a duty, *sua sponte*, not to allow testimony which commented on a witness'[s] credibility." *Id.* at 520 (citing *Milbradt*, 305 Or at 629-30); *see also State v. Lowell*, 249 Or App 364, 366-70, 277 P3d 588, *rev den*, 352 Or 378 (2012) (holding that the trial court committed plain error by allowing an investigating detective to testify that he "didn't think that [the defendant] was being very honest" during his interview).

Most recently, we reaffirmed and enforced that principle under circumstances that are similar to those here. In *State v. Hollywood*, 250 Or App 675, 282 P3d 944 (2012), the defendant had allegedly sexually abused a nine-year-old girl, S. D. There was no physical evidence of sexual abuse. *Id.* at 676. At trial, in explaining her diagnosis that S. D. had been sexually abused, a CARES evaluator and pediatric nurse practitioner, Reilly, testified that S. D. "had difficulty with timing in sequence in recounting the abuse but that 'doesn't mean she's lying about something, she's just not capable of framing it in that context.'" *Id.* Reilly also testified that S. D. "does not have a problem with lying," that S. D. was "very consistent" in recounting details of the alleged abuse, and that, in Reilly's opinion, "there is no lying going on about what she's telling us in this evaluation." *Id.* at 677. The defendant's counsel did not object to that vouching testimony, and the trial court did not, *sua sponte*, strike it. *Id.* The jury convicted defendant of one count of first-degree rape and two counts of first-degree sexual abuse of a child. *Id.* at 676.

On appeal, the defendant contended that it was plain error for the trial court to have admitted Reilly's vouching testimony under *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010). We agreed. *Hollywood*, 250 Or App at 678-79 (citing *Milbradt*, 305 Or at 630; *McQuisten*, 97 Or

App at 520). In deciding to exercise our *Ailes* discretion to correct the error, we explained that "the harm in this case was significant; because there was no physical evidence of sexual abuse, the credibility of S. D.'s allegations was at the heart of the state's case." *Id.* at 680.

The operative legal principles consistently reiterated over nearly 30 years, from *Middleton* and *Milbradt* through *Hollywood*, are patent and beyond reasonable dispute: It is legally impermissible under Oregon law for a witness to comment on the credibility of another witness, and, in enforcing that principle, trial courts are obligated, *sua sponte*, to exclude and, if necessary, strike testimony that comments on a witness's credibility.

Further, the applicability and correct application of those principles in this case are beyond reasonable dispute and do not require us to "go outside the record or choose between competing inferences." *Brown*, 310 Or at 355. Rather, as the extended excerpts of Hill's and Steinhauser's testimony set out above disclose, that testimony (*e.g.*, "Do you have any shred of concern, any doubt in your mind whatsoever, that what [plaintiff] told you is the absolute truth? * * * I have no doubt"; "[W]hat's more likely is that an alleged perpetrator is going to lie about the abuse, rather than a victim—alleged victim lie about—or fabricate a story of abuse") partakes of explicit vouching for plaintiff's credibility. Indeed, it is difficult to conceive of a more blatant and pervasive violation of the *Middleton/ Milbradt* proscription. *Cf. State v. Remme*, 173 Or App 546, 558, 23 P3d 374 (2001) (explaining that "it is one thing to educate the jury about an unusual phenomenon bearing on credibility, but it [is] quite another to 'connect the dots' explicitly by eliciting testimony relating that phenomenon's specific application to a particular witness's testimony" and "[a]t least the last 'dot' must be left 'unconnected'"). The trial court plainly erred in failing to act to preclude that testimony or, at least once elicited, to strike the testimony and take appropriate measures, including by admonition, to prevent its recurrence.

We turn then to whether this is an appropriate case in which to exercise our *Ailes* discretion. Here, as in similar or analogous cases, the gravity and centrality of

the error militates decisively in favor of correction of the error. Here, as noted, the vouching was egregious: Hill and Steinhauser emphatically and repeatedly offered their respective opinions that plaintiff was truthful in her accounts of the alleged abuse. *See* 253 Or App at 4-8. Those comments on plaintiff's credibility were especially potentially prejudicial because, given the lack of physical evidence of abuse and the absence of eyewitness testimony, this case reduced to a classic swearing contest, with the outcome depending very substantially, perhaps exclusively, on the jury's determination of the parties' relative credibility. Indeed, because Hill and Steinhauser testified as expert witnesses, their opinions may well have carried special weight with the jury. *See, e.g., Lowell*, 249 Or App at 370 (explaining that, where the case "boiled down * * * to a credibility contest between the complainant and defendant, evidence commenting on the credibility of either was likely to be harmful," especially where that testimony was "couched in terms of [the witness's] expertise in identifying untruthfulness").

The erroneous admission of the vouching testimony is, alone, sufficient to require reversal and remand. If, however, there could be any doubt as to the necessity of a new trial, the erroneous admission of the expert diagnoses of sexual abuse buttresses the correctness of our disposition.

As noted, defendant contends that admission of Hill's and Steinhauser's expert diagnoses of sexual abuse constituted plain error under *Southard*, where the Supreme Court held that a diagnosis of sexual abuse is not admissible under OEC 403 because the "marginal" probative value of the diagnosis is outweighed by the risk of unfair prejudice to the defendant. 347 Or at 140-42. Further, in *Lupoli*, the Supreme Court recognized that, where an alleged victim makes claims of sexual abuse in the absence of physical evidence of the alleged abuse, a sexual abuse diagnosis is "based ultimately and only" on whether the witness who provides the diagnosis believes the alleged victim's report of the alleged abuse. 348 Or at 361. Thus, in those circumstances, as here, vouching testimony and a diagnosis of sexual abuse are inextricably related. We acknowledged that reality in *Hollywood* when we held that the harm of admitting the vouching testimony

in that case was "significant; because there was no physical evidence of sexual abuse, the credibility of [the alleged victim's] allegations was at the heart of the state's case." 250 Or App at 680.

Plaintiff contends, nevertheless, that there was no error here, much less plain error under *Southard* (and, by necessary implication, *Lupoli*), because those cases arose in the criminal context and have not been extended to civil litigation. In a related sense, plaintiff asserts that, given differences between the criminal and civil contexts, the extension of *Southard* (and *Lupoli*) to the latter is subject to reasonable dispute, precluding plain error review.

We understand plaintiff's position in those respects to rest on several propositions, some of which are interrelated, to wit:

*First*, plaintiff posits that

"civil cases and criminal cases are different in major respects. Most importantly, criminal defendants are protected by Constitutional guarantees that are inapplicable in civil cases. Simply put, a civil defendant is not going to jail if he loses."

In a related sense, according to plaintiff, "in a civil case, [diagnostic] testimony is not unfairly prejudicial to defendant because the stakes are not as high as in a criminal case and Constitutional rights do not come into play."

*Second*, plaintiff contends, because a proponent is subject to different standards of proof in criminal and civil cases, the same testimony carries different evidentiary weight in the two contexts—and is *less* likely to affect the outcome in a civil case than in a criminal case. Specifically, in plaintiff's view,

"in a criminal case where guilt has to be proven beyond a reasonable doubt, each piece of evidence bears more of the relative weight of the case. In contrast, in a civil case with redundant evidence in the record, quite a bit of evidence could be seen as surplusage—it does not take much evidence to tip the scales towards a preponderance of the evidence."

*Third*, plaintiff posits that in a criminal case in which the state charges a defendant with sexual abuse,

"[t]he only substantive issue in the trial" is whether the charged conduct occurred, whereas "the plaintiff in a civil case has to prove that she was injured by the defendant's conduct, [and] not only that the defendant committed the conduct."

None of those propositions has plausible merit. Accordingly, none implicates a reasonable legal dispute as to the propriety of extending the analysis of *Southard* and *Lupoli* to civil litigation.

Plaintiff's first proffered distinction rests on a patently erroneous understanding both of the nature of procedural protections afforded in a civil proceedings and of *Southard*'s rationale. That purported distinction proceeds, at least implicitly, from the specious premise that liberty interests are always and necessarily to be afforded greater procedural protection than property interests, regardless of their relative magnitude or the severity of the attendant consequences. In all events, that premise is not only insupportable, but it is also inapt because, in *Southard*, the court's decision was based on OEC 403, not on any constitutional prescription. Notwithstanding plaintiff's contrary contentions, we discern no principled reason why the court's OEC 403 balancing analysis in that criminal case should obtain different results in this civil case.

Plaintiff's second proposed distinction—*viz.*, that in criminal sexual abuse prosecutions the state must prove only culpable conduct while in a civil case, the plaintiff must prove both tortious conduct and injury—is, at best, a *non sequitur*. Even assuming, without endorsing, plaintiff's overbroad characterization of the state's burden in the criminal context, the fact remains that, in both contexts, proof of culpable conduct is an essential element of the proponent's (the state's or the plaintiff's) case. Just as expert diagnosis testimony that is inadmissible under *Southard* may impermissibly affect the determination in the criminal context as to whether culpable conduct actually occurred, the same is true in the civil context with respect to the determination of the conduct element of a tort.

Plaintiff's third and final proffered distinction— pertaining to differing standards of proof—is, frankly, counterintuitive. As a matter of logic and common sense, the potentially prejudicial impact of erroneously admitted

evidence proffered by the party with the burden of persuasion would, at least generally, seem to be greater where the burden of persuasion is by a mere preponderance rather than beyond a reasonable doubt.

Finally, plaintiff asserts that, even if the error is plain, we should decline to exercise our *Ailes* discretion here because the gravity of the error is materially different in the civil context. That assertion appears to be predicated on the same purported distinction between defendant's liberty and property interests that we addressed above, and we reject it for the same reasons. Plaintiff also contends that we should decline to exercise our *Ailes* discretion here because, according to plaintiff, defendant made a tactical choice "to allow Plaintiff's experts to testify that they based their diagnoses of Plaintiff on her own statements in order to attack the methodology and substance of the diagnoses on cross examination and in closing argument." Ironically, as support for that proposition, plaintiff relies on *State v. Lovern*, 234 Or App 502, 228 P3d 688 (2010), where we *rejected* the state's contention that the defendant may have had tactical reasons for wanting the diagnosis of sexual abuse admitted into evidence. *Id.* at 512. Plaintiff emphasizes, nevertheless, our observation in *Lovern* that the defendant had objected to the admission of a diagnosis of sexual abuse, albeit on different grounds (lack of foundation). *Id.* at 506.

Plaintiff accords unwarranted weight to our observation in *Lovern*. Here, as in *Lovern*—and a bevy of our post-*Southard* plain error cases in which we reversed criminal convictions and remanded—the Supreme Court's decision in *Southard* issued after the trial. Accordingly, defendant did not waive an objection predicated on then-extant case law. *State v. Feller*, 247 Or App 416, 421, 269 P3d 110 (2011) ("Given that state of the law, the only inference that we draw from defendant's failure to object is that counsel understood that an objection would be futile and, instead, attempted, as much as possible, to combat any adverse effect the expert evidence would have on the jury's view of the case."). In all events, since *Southard,* and after *Lovern*, we have "repeatedly held that it is plain error for a trial court to admit a medical expert's diagnosis of sexual abuse in the absence of physical findings to support the

diagnosis," *State v. Codon*, 247 Or App 756, 759-60, 270 P3d 409 (2012), and we have also repeatedly rejected arguments that a defendant might have had tactical reasons for desiring the admission of a diagnosis of sexual abuse. *See, e.g.*, *Feller*, 247 Or App at 421.

In sum, the trial court erred in failing to preclude vouching testimony by plaintiff's expert witnesses and in admitting the expert diagnoses of sexual abuse, and those errors, either individually or collectively, were not harmless.

Reversed and remanded.