Argued and submitted March 22, 2012, reversed and remanded May 30, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ASKIA BROWN,
*Defendant-Appellant.*

Multnomah County Circuit Court
080833622; A144344

302 P3d 1214

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney-in-Charge, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

A jury found defendant guilty of two counts of second-degree sexual abuse and four counts of third-degree sexual abuse of two victims. On appeal, defendant contends that the trial court erred in admitting medical diagnoses that one of the victims was sexually abused and the other was "highly concerning for sexual abuse." Under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), we agree that the trial court erred in admitting the diagnoses. Defendant also contends that the trial court erred in admitting two exhibits as extrinsic evidence on a collateral issue, which were offered for the purpose of attacking defendant's credibility. Because we conclude the court erred in admitting the evidence of the diagnoses, we need not consider defendant's second contention. We reverse and remand.

Because defendant was convicted, we summarize the facts in the light most favorable to the state. *State v. Vidal*, 245 Or App 511, 513, 263 P3d 364 (2011), *rev den*, 351 Or 761 (2012). Defendant was a high school track and personal fitness coach. Fourteen-year-old M ran cross country and track for her high school. She began training privately with defendant in 2008, meeting with him two or three times a week at his studio. At the end of each workout, defendant would give M a massage using massage oil. Defendant told her that the massage "helped loosen up the muscles."

On August 22, 2008, as defendant was giving M a massage, he put his hand inside her underwear and touched the inside of her labia several times. M did not tell defendant to stop because she trusted him and thought he was giving her a sports massage. Then defendant hit M on her buttocks and said, "You're done." After M got up, defendant put his arm around her and said, "You are a bad girl." He asked her if she liked it and M said, "No." Defendant then asked her why she did not tell him to stop.

Defendant and M walked out of the studio together and he said, "This has never happened before. I can't believe this happened. I'm so sorry. It'll never happen again." Defendant followed M as she began to walk away and asked her if she was going to tell anyone. M said she was going to tell

her mother. Defendant asked if he could speak to M's mother and she said no. Defendant started to cry and told M not to tell anyone because it would "ruin" him.

M went directly to her father's office and met with a police officer there. M was evaluated at CARES, a child abuse assessment center. The same day, a doctor took a swab from M's labia to collect DNA and test for the presence of massage oil. On August 27, 2008, CARES diagnosed M as having been sexually abused. In a report written on March 20, 2009—approximately seven months after the CARES diagnosis—a forensic serologist stated that the DNA collected from M's labia matched defendant's male chromosome. The likelihood of that male chromosome occurring is one in 7,000.

Fifteen-year-old E ran cross country and track for her high school; defendant was E's coach. E also had private training sessions with defendant at his studio. Defendant would give E massages after training sessions, using massage oil.

In late June 2008, defendant gave E a massage that made her uncomfortable. E was lying on her stomach, and defendant was massaging her legs. Then defendant put his hand inside E's underwear and massaged her buttocks. Defendant moved his hand and rubbed E's labia for one to two minutes. Afterward, defendant said not to tell anyone and that it was a "personal massage." E complied and, at that time, did not tell anyone what had happened.

E later learned about the incident with defendant and M because it was on the news. E was upset and felt like she should have done something to prevent it from happening to others. E told her school counselor that defendant had touched her inappropriately, and the counselor called the police. CARES interviewed E, but she declined to have a physical exam. CARES diagnosed E as "highly concerning for sexual abuse."

Defendant was charged with one count of second-degree sexual abuse and two counts of third-degree sexual abuse against M. He was also charged with one count of second-degree sexual abuse and two counts of third-degree

sexual abuse against E, and two counts of third-degree sexual abuse against a third victim, K.[1]

At trial, M and E testified about their experiences with defendant. Both the state and defendant called experts to testify about the DNA evidence. Defendant testified in his own defense. Defendant acknowledged that he had given M a sports massage after her training session on August 22, 2008, using massage oil. Defendant said that he had massaged her groin, buttocks, and upper inner thigh. He acknowledged touching M near her vagina, but denied making contact with any portion of her vagina. Defendant said that, after the massage, M told him she felt uncomfortable. He said he asked if he could speak to her mother, and M said no. Defendant also denied touching E in her vaginal area.

The jury found defendant guilty of Counts 1 through 3, related to M, and Counts 6 through 8, related to E.

On appeal, defendant relies on *Southard*, 347 Or 127, to assert that the trial court erred in admitting the diagnoses from CARES that M was sexually abused and that E was "highly concerning for sexual abuse."[2] In *Southard*, the Supreme Court held that, because there is a risk that the jury will not make its own credibility determination, "but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible," a diagnosis of sexual abuse is not admissible under OEC 403 in the absence of physical evidence of abuse. *Id.* at 141-42; *see also State v. Merrimon*, 234 Or App 515, 520-21, 228 P3d 666 (2010) (the same risk occurs with a diagnosis of "highly concerning of sexual abuse").

Because there is no physical evidence of sexual abuse of E, the state concedes that the proper remedy is to reverse and remand defendant's convictions with respect to

---

[1] The jury acquitted defendant on the two counts concerning K. Our disposition of this appeal does not affect that acquittal.

[2] The trial occurred in August and September 2009. The Supreme Court decided *Southard* on October 1, 2009. Although this case was decided before the court issued its opinion in *Southard*, the parties contend—and we agree—that this assignment of error is preserved on appeal.

E. We agree and therefore reverse and remand Counts 6 through 8.

As for M, the state concedes that the trial court erred in admitting the diagnosis but argues that the error is harmless. That is, given the other facts—the DNA evidence and M's testimony—the state argues that there is little likelihood that the jury's consideration of the sexual abuse diagnosis had any influence on the jury's determination that defendant was guilty of sexual abuse.[3] We disagree.

An error is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As the Supreme Court stated in *Southard*, 347 Or at 140-41, "The fact that the diagnosis came from a credentialed expert, surrounded with the hallmarks of the scientific method, created a substantial risk that the jury 'may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence[.]'" (Quoting *State v. Brown*, 297 Or 404, 439, 687 P2d 751 (1984).) *See also State v. Davilia*, 239 Or App 468, 476-78, 244 P3d 855 (2010) (When there is a diagnosis of sexual abuse with no physical evidence, the court cannot conclude the erroneously admitted evidence was unlikely to have affected the finder of fact's verdict.). Here, the expert's diagnosis of sexual abuse, which was not based on any physical evidence of sexual abuse, created that risk. Even though there was other evidence of sexual abuse, we cannot say that there is little likelihood that the diagnosis affected the verdict. Defendant took the stand in his own defense, offered explanations of his conduct and the presence of DNA, and was convicted by a 10-2 vote. Given the nature of the errors and the record as a whole, we cannot say that it was harmless error.

Defendant contends that the trial court erred in admitting two exhibits—defendant's college transcript and his application for employment at Riverplace Athletic Club—because the exhibits were extrinsic evidence on a collateral issue, offered for the purpose of attacking defendant's credibility, which is impermissible under OEC 608(2). The state

---

[3] The state does not argue that the DNA evidence—which was not a basis for the diagnosis—would affect the OEC 403 analysis; as noted, the state concedes that it was error to admit the evidence.

responds that defendant's educational background was not a collateral issue because defendant claimed he was an expert in sports massage and that he was merely performing sports massages during the instances of alleged sexual abuse. Because we reverse and remand all counts on which defendant was convicted, we need not and do not consider defendant's argument.

Reversed and remanded.