Submitted October 16, 2013, convictions on Counts 1 and 2 reversed and remanded; remanded for resentencing; otherwise affirmed September 4, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DWAYNE EDWARD ABRAHAM,
*Defendant-Appellant.*

Multnomah County Circuit Court
110833195; A150400

335 P3d 293

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for unlawful delivery of cocaine within 1,000 feet of a school. He argues that the trial court erroneously admitted evidence that, two weeks after the charged conduct, he told his girlfriend that he wanted to sell crack cocaine. In defendant's view, that evidence about a possible sale of cocaine at some unspecified time in the future was irrelevant to show that, two weeks earlier, defendant intended to deliver the cocaine in his possession; the state counters that the evidence was relevant to show defendant's prior intent to deliver cocaine. As explained below, we conclude that it was error to admit the evidence and that error likely affected the jury's verdict. Accordingly, we reverse and remand.

We begin with the background facts pertinent to our assessment of the admissibility of defendant's statement. On August 8, 2011, two police officers were on patrol in an area of Portland known for crack cocaine dealing. The officers saw defendant and two other people standing close together in a building entryway. As the officers pulled their patrol car to the curb next to the group, everyone began to walk away, and defendant tossed a plastic bag on the ground. The officers stopped defendant and the two others and discovered that the bag contained white rocks that they believed to be crack cocaine. They arrested defendant and found additional white rocks in defendant's pockets, along with $5 in cash. When asked about those items, defendant responded, "So? I'm a[] user." One of the individuals at the scene with defendant, Fleming, later testified that she was going to buy $10 worth of crack cocaine from defendant, but the police had arrived before they could finish the deal.

The state charged defendant with unlawful delivery of cocaine within 1,000 feet of a school, ORS 475.882, unlawful delivery of cocaine, ORS 475.880, and unlawful possession of cocaine, ORS 475.884.[1] At trial, the state sought to admit a phone conversation between defendant and his

---

[1] "Delivery," as pertinent here, "means the actual, constructive or attempted transfer *** of a controlled substance." ORS 475.005(8). A person is guilty of attempting to transfer a controlled substance if the person intentionally engages in conduct that constitutes a substantial step toward transferring such a substance, ORS 161.405(1), and possessing a controlled substance with the intent

girlfriend that was recorded when she visited him in jail. During that conversation, defendant told his girlfriend, "I want to slang through him without him knowing it's me." As part of the state's offer of proof, an officer testified that, in the context of defendant's conversation, "slang" referred to selling crack cocaine. The state argued that, as a result, the conversation was relevant to defendant's intent. Defendant responded that the statement was not relevant, focusing on the facts that it was made two weeks after the charged conduct and related to future conduct:

> "One last argument that I have, Your Honor, that occurred to me after my client pointed it out, our incident date is August 8th. [That] conversation[] was [August 21st] and it deals with something that was to occur in the future.
>
> "Therefore, it's a future bad act. It's not even a prior bad act or a contemporaneous bad act and that's a totally separate and distinct reason that I failed to articulate earlier why that commentary is not relevant to the question of what occurred on August 8 and what intent [defendant] had on August 8."

The trial court ruled that the conversation was "relevant to what [defendant's] intent is and his intent is that he wants to sell drugs." At defendant's trial, a recording of defendant's conversation with his girlfriend was played for the jury, and an officer testified that "slang" referred to selling crack cocaine. The jury later found defendant guilty of all three drug offenses.[2]

On appeal, defendant argues that his statement was inadmissible under OEC 401 because it did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

---

to transfer it may constitute a substantial step toward actually transferring it, *State v. Alvarez-Garcia*, 212 Or App 663, 666-67, 159 P3d 357 (2007).

[2] The trial court merged the guilty verdict for the unlawful delivery charge under ORS 475.880 (Count 2) into the guilty verdict for the unlawful delivery within 1,000 feet of a school charge under ORS 475.882 (Count 1). The trial court imposed a sentence of discharge on the unlawful possession charge (Count 3). On a separate charge for failure to report as a sex offender, ORS 181.599(2) (Count 4), defendant pleaded no contest, and the trial court imposed a sentence of discharge. Defendant's appeal, then, challenges his convictions for unlawful delivery of cocaine within 1,000 feet of a school.

OEC 401 (so defining "'relevant evidence'"); *see also* OEC 402 ("Evidence which is not relevant is not admissible.").[3] Specifically, defendant contends that "[t]he fact that [he] may have expressed his desire to start selling crack cocaine two weeks after his arrest did not make it more likely that he intended to sell the crack cocaine that he possessed when he was arrested." (Emphasis omitted.) Defendant argues that the recorded statement "was relevant only to the extent that it showed defendant's propensity to sell crack cocaine." In response, the state disputes defendant's assertion that the evidence "only demonstrated his propensity to sell cocaine."[4] The state argues that defendant's statement "that he would like to sell cocaine in the future tends to support an inference that he intended to sell the crack cocaine he had in his possession at the time of his arrest."[5] We review a trial court's determination of relevance for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

Under OEC 401, "evidence is relevant 'so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action.'" *State v. Davis*, 351 Or 35, 48, 261 P3d 1197

---

[3] On appeal, both parties frame their arguments under OEC 401, and each suggests in passing that OEC 404(3) does not directly apply to the evidence in this case. OEC 404(3) prohibits the admission of "[e]vidence of other crimes, wrongs or acts *** to prove the character of a person in order to show that the person acted in conformity therewith." For his part, defendant argues that the evidence was "similar to" evidence prohibited by OEC 404(3), but argues, without further explanation, that the evidence was "not a prior crime or wrong act." The state contends that defendant's "admission that he would like to sell cocaine in the future is not a crime, wrong, or act for purposes of OEC 404(3) and is not subject to analysis under that rule" because that admission is not "evidence of misconduct." We express no opinion as to whether OEC 404(3) applies to the evidence in this case—for the reasons mentioned by the parties or any other—and proceed by addressing the parties' arguments under OEC 401.

[4] That is, the state does not argue that defendant's statement was relevant under OEC 401 because it showed defendant's propensity to deal drugs, and that inference, in turn, supported a showing that defendant intended to deal drugs that were found in his possession. *See State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999), *rev den*, 332 Or 632 (2001) (concluding that the weight of authority suggests that mere propensity evidence is not logically relevant). Rather, the state argues that the evidence was relevant to establish defendant's intent without any reference to his propensity to commit criminal acts.

[5] The state also suggests that defendant's statement was "relevant to explain his motive for possessing the quantity of cocaine that he had." We do not see a meaningful distinction in this case between defendant's intent to deliver cocaine and his "motive for possessing" the cocaine that he had.

(2011) (quoting *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999)). The parties' dispute about whether that test is met focuses on the timing of defendant's statement. Defendant argues that the evidence is not relevant because defendant spoke to actions that he wanted to take in the future, and he made that statement two weeks *after* the charged crime. The state acknowledges that defendant's statement is about future action, but contends that the statement is relevant to his state of mind as to the prior charged crime, where the state of mind with respect to the future contemplated action and the past action is the same—intent to deliver crack cocaine.

We start with the observation that, where a person, *before* the charged crime, expresses a desire to engage in future action, that statement may be relevant to show the state of mind of that person (or someone who heard the statement) at the time of the alleged crime. In *State v. Salas-Juarez*, 349 Or 419, 427-29, 245 P3d 113 (2010), for example, where the question was whether the defendant or his friend had stabbed the victim, the Supreme Court concluded that evidence that, hours prior to the stabbing, the friend had said that he wanted to "slash" a bartender's son who upset him was relevant to who committed the crime. As the court explained, the comment revealed the friend's "angry" frame of mind, and other evidence—that the friend then recruited the defendant to instigate a fight with the victim—supported an inference that the friend's state of mind continued until the charged crime occurred. *Id.* at 428. That same reasoning informed our decision in *State v. Ervin*, 193 Or App 41, 44, 88 P3d 296 (2004), where the defendant, who fled with her boyfriend from the scene where the boyfriend had shot at police, was charged with attempted aggravated murder, conspiracy to commit aggravated murder, and attempting to elude police in a vehicle. There, we concluded that evidence that the boyfriend had previously told the defendant that he wanted to kill police officers was relevant to show the defendant's implicit agreement to kill the officers and her state of mind in helping him flee. *Id.*

But here, the statement in question was made two weeks after the alleged drug delivery. At *that* point, defendant expressed a general desire to sell crack cocaine in the

future. Nothing about that statement revealed any connection between defendant's intent as to a possible future drug sale and his intent with respect to the drugs that he possessed two weeks earlier. *Cf. State v. Painter*, 255 Or App 513, 519-21, 300 P3d 179 (2013) (concluding that the defendant's threatening statements about police officers—made after his arrest—were not relevant to show that he knowingly rammed his car into the police cruiser on the night of the crime, where those statements could not reasonably be understood as reflecting anger toward the police before the crime, but were better understood as the product of the defendant's anger because of his arrest). In other words, defendant's desire to deliver cocaine at some unspecified later time did not, without more, show that two weeks earlier defendant intended to deliver the cocaine on his person at the time of the alleged crime.

The best that can be said for the relevance of defendant's statement is that, because defendant hoped to deliver cocaine in the future, he must have acted consistently with that aspiration when he possessed cocaine two weeks earlier. Given the generalized and hypothetical nature of defendant's statement, however, the only way that it shed light on his past state of mind was by showing that defendant had a propensity to deal drugs. That is, unless we fall back on the assumption "once a drug dealer, always a drug dealer," defendant's stated desire to sell cocaine was too general and too speculative to support an inference that he intended to sell the cocaine that he had two weeks earlier while standing in an alcove on a street in downtown Portland.[6] Without resorting to that propensity-based inference, the state cannot show that defendant's general statement that he would like to sell cocaine in the future had a tendency to make it more likely that, when he possessed cocaine two weeks earlier, he intended to sell that cocaine. As a result, that evidence was irrelevant to show defendant's intent and was not admissible.

The question that remains is whether the error in admitting the evidence requires reversal in this case. Under

---

[6] The character-based assumption would be all the more tenuous in this case, where the challenged evidence did not show that defendant dealt drugs after the charged conduct, only that he hoped to deal drugs some time in the future.

the harmless error doctrine, reversal is not warranted if "there is little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). We focus on "the possible influence of the error on the verdict rendered," not whether we "would regard the evidence of guilt as substantial and compelling" if sitting as factfinders. *Id.*

With respect to defendant's intent to deliver cocaine, the state's case centered on the testimony of Fleming, who stated that she was about to buy cocaine from defendant when the police arrived. But Fleming's testimony was not uncontroverted. Fleming struggled with an addiction to cocaine, and she had lost her job the morning of the incident. After the police searched Fleming, they confirmed that she was willing to come into court and testify about the incident but did not arrest her or charge her with a crime. Drawing from that evidence, defense counsel argued to the jury that Fleming was an "admitted crack addict, who [was] rattled that day, who [was] teetering on relapse, who was upset, who was crying, who was grateful to the police, who wanted her to help them get these two guys that they decided were bad men."

The state's other circumstantial evidence of defendant's intent to deliver was likewise met with contrary evidence. For example, the state presented testimony from an officer that the location of defendant's arrest was an area where drugs were commonly sold. Yet the same officer testified that individuals also commonly used drugs in that area, specifically in alcoves like the one where defendant was standing when the police first saw him. Although one of the officers testified that the total amount of crack cocaine defendant possessed (1.4 grams) was not a "common user amount" in the downtown area, that same officer admitted that it was possible that certain heavy users would consume that much in a day. Defendant presented testimony from a drug counselor that crack cocaine sells for between $50 and $100 per gram and that it is not uncommon for people to use crack cocaine on a daily basis at a rate of $150 to $200 per day. The jury also heard evidence that defendant suffered from a substance abuse problem, he would use between $75 and $100 worth of crack cocaine a day, and he bought his

crack cocaine at the beginning of the month because that was when he got paid.

In sum, the jury was presented with conflicting circumstantial evidence as to what defendant intended to do with the cocaine that he possessed. And that was the central issue in the case. Defendant's counsel acknowledged that defendant possessed cocaine for personal use and focused argument on the state's failure to prove that he intended to deliver it. *See Painter*, 255 Or App at 523 (concluding that evidentiary error required reversal where improperly admitted evidence was "presented to the jury as bearing directly on the central issues in the case"). Ultimately, the jury returned a 10 to 2 verdict on both delivery charges. *See State v. Brown*, 256 Or App 774, 778, 302 P3d 1214 (2013) (citing the fact that the defendant "was convicted by a 10-2 vote" in support of the conclusion that evidentiary error was not harmless in sexual abuse case). Taking all of those circumstances together, we cannot say that there is little likelihood that the improper admission of defendant's statement affected the jury's verdict.

Convictions on Counts 1 and 2 reversed and remanded; remanded for resentencing; otherwise affirmed.